TERESA D. EVANS, ADMINISTRATRIX OF THE ESTATE OF BARRY STEVEN POSEY v. NORTH CAROLINA DEPARTMENT OF CRIME CONTROL AND PUBLIC SAFETY, DIVISION OF VICTIM AND JUSTICE SERVICES, CRIME VICTIMS COMPENSATION COMMISSION

No. 9010SC301

(Filed 18 December 1990)

1. **Criminal Law § 1666 (NCI4th)— crime victim compensation— misconduct of claimant—proximate cause**

  Where a crime victim compensation claimant's injuries are a direct result of the criminally injurious conduct of another, the claimant's own misconduct must have been a proximate cause of those injuries in order for the Crime Victims Compensation Commission to deny or reduce an award for those injuries under N.C.G.S. § 15B-11(b).

  **Am Jur 2d, Criminal Law §§ 1052, 1053, 1056-1058.**

  **Statutes providing for governmental compensation for victims of crime. 20 ALR4th 63.**

2. **Criminal Law § 1666 (NCI4th)— crime victim compensation— what constitutes misconduct—reasonable man standard**

  The conduct of a claimant is misconduct if it is not within the accepted norm or standard of proper behavior, which includes unlawful conduct, and the test for accepted norms and proper behavior is determined by use of a reasonable man standard or what a reasonable person would have done under similar or like circumstances.

  **Am Jur 2d, Criminal Law §§ 1052, 1053, 1056-1058.**

  **Statutes providing for governmental compensation for victims of crime. 20 ALR4th 63.**

EVANS v. N.C. DEPT. OF CRIME CONTROL

[101 N.C. App. 108 (1990)]

3. **Criminal Law § 1666 (NCI4th) — crime victim compensation — contributory misconduct — denial or reduction of award — appellate review**

   The Crime Victims Compensation Commission should be affirmed in denying or reducing a claimant's benefits for contributory misconduct if there is in the record substantial evidence that a person of ordinary prudence would have reasonably foreseen that the conduct in question would lead to an injurious result, and if this conduct was unlawful or breached the standard of conduct acceptable to a reasonable person. If there is not substantial evidence in the record to support such conclusions, any order of the Commission reducing or barring claimant's recovery must be reversed.

   **Am Jur 2d, Criminal Law §§ 1052, 1053, 1056-1058.**

   **Statutes providing for governmental compensation for victims of crime. 20 ALR4th 63.**

4. **Criminal Law § 1666 (NCI4th) — crime victim compensation claim — denial for contributory misconduct — insufficient evidence**

   A decision by the Crime Victims Compensation Commission denying compensation to a stabbing victim on the ground that he had engaged in "contributory misconduct" was unsupported by substantial evidence where it was based upon findings that the victim left a bar with two women, one of whom had two tattoos on her back, under the assumption that they were going dancing at another bar, and that one of the women stabbed the victim after they had pulled into an empty parking lot.

   **Am Jur 2d, Criminal Law §§ 1052, 1053, 1056-1058.**

   **Statutes providing for governmental compensation for victims of crime. 20 ALR4th 63.**

APPEAL by petitioner from judgment entered 17 January 1990 by *Judge I. Beverly Lake, Jr.* in WAKE County Superior Court. Heard in the Court of Appeals 28 September 1990.

*Bode, Call & Green, by S. Todd Hemphill, for petitioner-appellant.*

*Lacy H. Thornburg, Attorney General, by Isaac T. Avery, III, Special Deputy Attorney General, and Linda Anne Morris, Assistant Attorney General, for the State.*

GREENE, Judge.

The petitioner appeals from a judgment filed in Wake County Superior Court on 18 January 1990, affirming a final determination of the North Carolina Crime Victims Compensation Commission (Commission) which denied compensation to the petitioner for injuries suffered by one Barry Steven Posey, a crime victim.

Barry Steven Posey originally filed a claim for compensation on 17 November 1987. Subsequently, Posey was killed in an incident unrelated to this case. Following his death, Posey's estate was substituted as claimant and his sister, Teresa D. Evans, was named administratrix of the estate. On 15 July 1988, the Director of the Crime Victims Compensation Commission entered a recommendation that the Commission allow compensation in the amount of $11,157.94. On 2 August 1988, the Commission entered its determination that "[n]ot withstanding the recommendation of the Director, by unanimous vote of the members claimant's claim for compensation is disallowed."

The petitioner then filed a petition for a contested case and the matter was heard by an Administrative Law Judge. The Administrative Law Judge entered the following findings of fact and conclusions of law:

### Findings of Fact

1. The Petitioner-claimant in this case is the estate of Barry Steven Posey, Teresa D. Evans, Administratrix.

2. Respondent has the authority and responsibility under North Carolina General Statutes Chapter 15B, the ["]North Carolina Crime Victims Compensation Act," to administer the Act in North Carolina, including the investigation and award or denial of claims.

3. Barry Steven Posey was an interstate truck driver. On October 15, 1987 he completed a delivery in Monroe, North Carolina and received permission to proceed to a truck stop in Charlotte for diesel fuel and to await further instructions.

4. While awaiting further instructions from his dispatcher, Barry S. Posey met another driver and his wife and went with them to Kiker's Bar on Freedom Drive in Charlotte to drink beer and play pool.

5. Upon arriving at Kiker's Bar Barry S. Posey met two women in the parking lot as the women were parking their car.

6. The two women, identified as Sandy and Bonanita, invited Barry S. Posey to sit at a table with them and to play pool.

7. Barry S. Posey and the two women each were consuming beer in the bar.

8. While sitting with the two women, Bonanita offered to show and did show Barry S. Posey a tattoo on her right shoulder blade. Sandy asked Barry S. Posey if he would like to go dancing with the two women after they played pool. Barry S. Posey accepted the offer with the understanding that the women would transport him to the proposed location for dancing and afterward return him to his truck at the truck stop.

9. After playing some pool, Barry S. Posey asked to see Bonanita's tattoo again. She showed him the tattoo again as well as another one located on her left shoulder blade.

10. Sandy, Bonanita, and Barry S. Posey left Kiker's Bar with Barry S. Posey sitting in the middle and with Sandy driving.

11. Sandy produced a partially filled bottle of Jim Beam liquor from which she drank before passing it to Barry S. Posey who also drank from it and passed it on to Bonanita.

12. Sandy was weaving as she drove. Bonanita and Barry S. Posey both asked Sandy to let someone else drive but she refused.

13. Sandy proceeded along Freedom Drive in Charlotte and pulled into an empty parking lot. Barry S. Posey stated that "it's closed", to which Sandy replied, "yea it is."

14. The three of them got out of the car in the empty parking lot. Bonanita disappeared from Barry S. Posey's view. Sandy came around the front of the car, turned to her right and stabbed Barry S. Posey in the stomach.

15. Barry S. Posey ran into the woods off the empty parking lot after being stabbed and, after falling down, crawled and hid in a wooded area adjacent to the parking lot.

16. After a period of time the car drove off and Barry S. Posey lay still. The car returned and someone called out "Barry" in a low voice and then drove off.

17. After waiting for a while, Barry S. Posey crawled out of the woods and yelled for help.

18. A nearby resident heard Barry S. Posey's calls for help and summoned police and emergency medical personnel.

19. Barry S. Posey was transported to Charlotte Memorial Hospital and treated for the stab wound. The following costs were incurred:

| | |
|---|---:|
| Charlotte Memorial Hospital | $ 8,547.60 |
| Charlotte Memorial Hospital | 1,584.84 |
| Charlotte Radiology | 51.00 |
| Southeast Anesthesia | 756.00 |
| Charlotte-Mecklenburg Health Services | 61.00 |
| Mecklenburg County Ambulance | 157.50 |
| TOTAL | $11,157.94 |

20. Barry S. Posey filed a claim for compensation under G.S. Chapter 15B on November 17, 1987. He recovered from his injury and and [sic] returned to his employment. On May 16, 1988 Barry S. Posey was killed in a motor vehicle accident in York, Pennsylvania while in the course of his employment.

21. Barry S. Posey was divorced and left no dependents. His sister, Teresa D. Evans, was named administratrix of his estate.

22. Barry S. Posey fully cooperated with law enforcement and Respondent in the investigation of this matter.

23. Barry S. Posey made the following payments against expenses before his death:

| | |
|---|---:|
| Charlotte Memorial Hospital | $ 550.00 |
| Charlotte Radiology | 51.00 |
| Southwest Anesthesia | 756.00 |
| Charlotte-Mecklenburg Health Services | 61.00 |
| Mecklenburg County Ambulance | 157.50 |
| TOTAL | $1,575.50 |

24. Claimant has no source of reimbursement from any collateral source of benefits for the remaining economic loss.

25. Respondent's Director Robert A. Hassell has certified that claimant has no collateral source for compensation in connection with this case.

26. G.S. 15B-11 lists grounds for denial of a claim for compensation or for reduction of an award. None of the grounds for denial or reduction of award are present in this case.

27. G.S. 15B-10(d) requires the Commission Director, in this case Robert A. Hassell, to "send each claimant a written statement of a decision made under subsection (a) or (b) (of G.S. 15B-10) that gives the reasons for the decision." No written statement containing the reasons for the decision of the Commission in this case was sent to claimant Barry S. Posey or to his estate, Teresa D. Evans, Administratrix.

## Conclusions of Law

1. The parties are properly before the Office of Administrative Hearings.

2. Criminally injurious conduct is defined in G.S. 15B(5) which provides, in pertinent part:

> "(c)riminally injurious conduct" means conduct that occurs or is attempted in this State which by its nature poses a substantial threat of personal injury or death, and is punishable by fine or imprisonment or death or would be so punishable but for the fact that the person engaging in the conduct lacked capacity to commit the crime under the laws of this State . . . ."

3. The stabbing which Barry S. Posey suffered on the night of October 15, 1987 in Charlotte, North Carolina was criminally injurious conduct because it resulted in serious bodily injury and is conduct punishable by a fine and imprisonment under G.S. Chapter 14.

4. G.S. 15B-4, regarding awards of compensation, provides that "compensation for criminally injurious conduct shall be awarded to a claimant if substantial evidence establishes that the requirements for an award have been met."

5. Substantial evidence is defined in G. S. 15B-2(12a) as "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."

6. The substantial evidence in this contested case establishes that Barry Steven Posey was a victim of criminally injurious conduct within this State on October 15, 1987 and is not disqualified under any of the conditions stated in G.S. 15B-11. His estate, Teresa D. Evans, Administratrix, is entitled to an award in the amount of $11,157.94 as sought in his petition and found appropriate by Commission Director Robert A. Hassell.

7. The decision of the Commission to deny compensation to claimant in this case is defective for two reasons.

1. the Commission failed to use proper procedure within the meaning of G.S. 150B-23(a)(3) when its Director failed to give claimant written reasons under G.S. 15B-11(d) for its decision to deny compensation and,

2. the Commission's decision denying compensation is not supported by any evidence and is arbitrary and capricious within the meaning of G.S. 150B-23(a)(4) as' described by the North Carolina Supreme Court in *Commissioner of Insurance v. Rate Bureau*, because the decision does not show any reasoned decision making or careful consideration of the facts and the law in this case. 300 N.C. 381, 269 S.E.2d 547 (1980).

Based upon these findings of fact and conclusions of law, the Administrative Law Judge recommended to the Commission that it "reverse its earlier decision denying compensation to the estate of Barry Steven Posey and that the Commission award the sum of $11,157.94 to the estate of Barry Steven Posey, Teresa D. Evans, Administratrix."

The Commission declined to adopt the Administrative Law Judge's finding of fact number 27, and conclusions of law number 6 and number 7. The Commission concluded as follows:

6. Based upon the findings of fact of the Administrative Law Judge, the actions of the deceased, Barry Steven Posey, in picking up two women at a bar and leaving with them, as well as the facts and circumstances under which the criminally

**EVANS v. N.C. DEPT. OF CRIME CONTROL**

[101 N.C. App. 108 (1990)]

injurious conduct occurred, establishes that the deceased engaged in contributory misconduct which directly resulted in the injuries he suffered and the claim of his estate is, therefore, disqualified under the provisions of G.S. 15B-11(b). This conclusion is consistent with other determinations of this Commission.

The petitioner appealed the Commission's decision to the Superior Court, which affirmed the Commission's final determination.

---

The dispositive issue is whether the Commission's final conclusion that Barry Steven Posey engaged in contributory misconduct is supported by substantial evidence.

The North Carolina Crime Victims Compensation Act is set out in Chapter 15B of the North Carolina General Statutes. In this case, the petitioner's claim for compensation was denied pursuant to a provision of the Act which provides that "[a] claim may be denied and an award of compensation may be reduced upon finding contributory misconduct by the claimant or a victim through whom he claims." N.C.G.S. § 15B-11(b) (1987).

The scope of review of a decision of an administrative agency is governed by the Administrative Procedure Act set out in Chapter 150B of the North Carolina General Statutes. *Walls & Marshall Fuel Co. v. N.C. Dept. of Revenue*, 95 N.C. App. 151, 381 S.E.2d 815 (1989). Under the act, this Court may "reverse or modify" the agency's decision only if:

the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C.G.S. § 150B-51(b) (1987). " 'Review in this court is further limited to the exceptions and assignments of error set forth to the order of the superior court' and by the arguments made in brief." *Walls* at 154, 381 S.E.2d at 817 (quoting *Watson v. N.C. Real Estate Comm.*, 87 N.C. App. 637, 639, 362 S.E.2d 294, 296 (1987) ). The petitioner asserts that the Commission's decision to deny compensation based on a conclusion that Posey engaged in contributory misconduct is (1) not supported by substantial evidence, (2) arbitrary and capricious, and (3) erroneous as a matter of law. However, the essential argument in the petitioner's brief is that the Commission's decision is not supported by substantial evidence, and we address only that issue.

In applying N.C.G.S. § 150B-51(b)(5), the Court employs the "whole record" test to determine whether the Commission's conclusions are supported by substantial evidence. *Walls* at 154, 381 S.E.2d at 817.

> The 'whole record' test does not permit the reviewing court to substitute its judgment for the agency's as between two reasonably conflicting views; however, it does require the court to take into account both the evidence justifying the agency's decision and the contradictory evidence from which a different result could be reached . . . . 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' . . . It is more than a scintilla or a permissible inference.

*Watson* at 639, 362 S.E.2d at 296 (quoting *Lacky v. N.C. Dept. of Human Resources*, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982) ). Since there is no dispute as to the facts in this case, the question before us is whether the Commission's findings constitute substantial evidence that Posey engaged in "contributory misconduct" as that term is used under N.C.G.S. § 15B-11(b). We conclude that it does not.

The question of what constitutes "contributory misconduct" is one of first impression for this Court. In determining the legislative intent behind the use of these words, we are guided by a 1989 amendment to the North Carolina Crime Victims Compensation Act which provides that "[t]he Commission shall follow the rules of liability applicable to civil tort law in North Carolina." N.C.G.S. § 15B-4(a) (1990).

EVANS v. N.C. DEPT. OF CRIME CONTROL

[101 N.C. App. 108 (1990)]

The legislature authorized the Commission to reduce or deny a claim for compensation where "misconduct" on the part of an injured claimant in some way contributed to the claimant's injury. Consistent with principles of tort law, in order for claimant's misconduct to be contributory it must combine with criminal action on the part of another to become a "real, efficient and proximate cause of the injury." *Crouse v. Woodruff*, 48 N.C. App. 719, 721, 269 S.E.2d 706, 708 (1980). This Court has defined proximate cause as

> a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, *and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed.*

*Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 233, 311 S.E.2d 559, 565 (1984) (emphasis added). "The test of foreseeability as an element of proximate cause does not require that the actor should have been able to foresee the injury in the precise manner in which it actually occurred." *Adams v. Mills*, 312 N.C. 181, 193, 322 S.E.2d 164, 172 (1984). Neither does the actor need to foresee the events which are merely possible, but only those which are reasonably foreseeable. *Id.*

[1] Therefore, where a claimant's injuries are a direct result of the criminally injurious conduct of another, the claimant's own misconduct must have been a proximate cause of those injuries in order for the Commission to deny or reduce a claim under the statute.

[2] Misconduct is defined as follows:

> A transgression of some established and definite rule of action, a forbidden act, a dereliction from duty, unlawful behavior, willful in character, improper or wrong behavior. . . .

Black's Dictionary 901 (5th edition 1979). While misconduct includes unlawful conduct as a matter of law, it may be something less than unlawful conduct, though more than an act done in poor taste. Misconduct requires some deviation from the accepted norm or standard of proper behavior. Accordingly, the conduct of the claimant is misconduct if it is not within the accepted norm or standard of proper behavior, which includes unlawful conduct. Consistent with principles of tort law, the test for determining accepted norms

and proper behavior is best determined by use of a reasonable man standard or what a reasonable person would have done under similar and like circumstances.

[3] Accordingly, if there is in the record substantial evidence that a person of ordinary prudence would have reasonably foreseen that the conduct in question would lead to an injurious result, and if this conduct was unlawful or if it breached the standard of conduct acceptable to a reasonable person, the Commission should be affirmed in denying or reducing claimant's benefits. If there is not substantial evidence in the record to support such conclusions, any order of the Commission reducing or barring claimant's recovery under the Act must be reversed.

[4] Here we do not find substantial evidence in the record to support the conclusion of the Commission that the claimant engaged in contributory misconduct.

The Commission's findings indicate that Posey left a bar with two women, one of whom had two tattoos on her back, under the assumption that they were going dancing at another bar. The record contains no substantial evidence to support a conclusion that Posey's injuries were reasonably foreseeable in light of his conduct. The Commission argues that it could rightfully conclude under the circumstances that Posey had solicited for purposes of prostitution, and that it is logical to assume there was a dispute over the price or when payment was to be made, leading to an assault on Posey and an attempted robbery. The record indicates no such conclusion on the part of the Commission, nor is there any evidence, much less any substantial evidence, to support the scenario suggested by the Commission. Accordingly, we find that the Commission erred by denying compensation to the petitioner.

Reversed and remanded.

Judges ORR and DUNCAN concur.

Judge DUNCAN concurred in this opinion prior to 30 November 1990.