MARK ANTHONY McCRIMMON, Petitioner v. CRIME VICTIMS COMPENSATION COMMISSION, Respondent

No. COA94-1029

(Filed 19 December 1995)

**Criminal Law § 1666 (NCI4th)— thief injured during crime— contributory misconduct—denial of claim under Victims Compensation Act**

Respondent Commission did not err in concluding that petitioner's actions constituted "contributory misconduct" under the North Carolina Crime Victims Compensation Act and in barring pursuant to N.C.G.S. § 15B-11(b) petitioner's claim for recovery of benefits under the Act, where petitioner snatched a twenty-dollar bill from the hand of a customer in a convenience store and was shot by the store proprietor when he attempted to flee the store, and petitioner should have reasonably foreseen that consequences of a generally injurious nature were probable under all the facts as they existed.

**Am Jr. 2d, Criminal Law §§ 1055-1058.**

**Measure and elements of restitution to which victim is entitled under state criminal statute. 15 ALR5th 391.**

Appeal by petitioner from order entered 5 July 1994 by Judge Howard R. Greeson, Jr. in Moore County Superior Court. Heard in the Court of Appeals 24 May 1995.

McCRIMMON v. CRIME VICTIMS COMPENSATION COMM.

[121 N.C. App. 144 (1995)]

*Cunningham, Dedmond, Petersen & Smith, by Bruce T. Cunningham, Jr., for petitioner-appellant.*

*Attorney General Michael F. Easley, by Assistant Attorney General Robert T. Hargett, for respondent-appellee.*

JOHN, Judge.

Petitioner applied to the Crime Victims Compensation Commission of the North Carolina Department of Crime Control and Public Safety (the Commission) for benefits after being shot while attempting to flee a convenience store with money he stole from a customer. The Final Decision of the Commission denied petitioner's claim, ruling that his "contributory misconduct" barred recovery. Petitioner appeals the order of the trial court affirming the Commission, arguing that being shot was not a foreseeable result of his theft of the store patron's money. Respondent counters that "the Victims Compensation Fund is not a Workers Compensation fund for criminals that are injured during their illicit employment." We affirm the trial court.

Pertinent facts and procedural information include the following: On 20 March 1992 at about 4:10 p.m., petitioner drank four or five beers at the home of a friend. After leaving the residence, petitioner drove to the Hillcrest Trading Post (Hillcrest), a convenience store, to purchase some breath mints. Petitioner departed the store without incident, but eventually returned between 6:15 and 6:30 p.m. He entered and removed a bottle of soda from the "drink box," whereupon he saw a customer, Charlie Lemmonds (Lemmonds), holding a twenty-dollar bill. Petitioner made a comment to Lemmonds to distract him, then snatched the bill and ran towards the exit door, still holding the bottle of soda. Frederick E. Sineath (Sineath), the proprietor of Hillcrest, heard a customer say "he got my money." Sineath shot petitioner in the back as the latter was opening the store's exit door. In consequence of injuries received, petitioner remains paralyzed from the waist down. He was subsequently charged with larceny, while Sineath was charged with assault.

Sineath in his deposition and Lemmonds in his testimony at Sineath's probable cause hearing each stated that petitioner, prior to being shot by Sineath, turned and raised the bottle of soda towards Sineath in a threatening manner. Both men also testified Sineath then ordered petitioner to stop as the latter was opening the door.

Petitioner insisted he heard no command to stop and that he in no way threatened Sineath with the bottle.

About 21 August 1992, petitioner filed a claim with the Commission seeking benefits pursuant to the North Carolina Crime Victims Compensation Act (the Act), N.C. Gen. Stat. § 15B-1 *et seq.* (1994). On 8 June 1993, petitioner's claim was denied.

Petitioner thereafter filed a Petition for Contested Case Hearing before the Office of Administrative Hearings. He alleged that taking the twenty dollar bill from the hand of the customer did not contribute to his injuries, "since it was unforeseeable that a third person would shoot the [p]etitioner in the back" and that the "criminal act [of Sineath] should override any finding of contributory misconduct."

The matter was heard before Administrative Law Judge Brenda Becton on 4 November 1993, who subsequently filed a recommended decision allowing petitioner's claim. However, in its Final Decision of 2 February 1994, the Commission denied the claim, concluding *inter alia* that "[p]etitioner's misconduct . . . contributed to his injuries;" that "it was reasonably foreseeable to the [p]etitioner that his illegal acts could result in injury to himself;" and that "the General Assembly did not intend for a person injured during the commission of criminal acts to receive any compensation [which is] reserved for truly innocent victims of crime."

Petitioner then filed a Petition for Review in the Moore County Superior Court, which affirmed the Commission's Final Decision by order dated 5 July 1994. On 2 August 1994, petitioner gave notice of appeal to this Court.

---

Petitioner's single assignment of error asserts that:

the act of Mr. Sineath was not reasonably foreseeable and therefore, by application of tort principles, [petitioner's acts did] not [constitute] contributory misconduct.

Petitioner thus essentially argues that the conclusions of the Commission that his "misconduct . . . contributed to his injuries" and that it was "reasonably foreseeable to the [p]etitioner that his illegal acts could result in injury to himself" were affected by error of law.

Under the North Carolina Administrative Procedure Act, codified at Chapter 150B of the General Statutes, if a party argues the final decision of an administrative agency is based upon error of law, ini-

tial judicial review is to be *de novo. In re Appeal by McCrary,* 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (1993) (citations omitted). *De novo* review requires a court to consider a question anew, as if not considered or decided by the agency. *Amanini v. N.C. Dept. of Human Resources,* 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994). Where the initial reviewing court, here the Superior Court, should have conducted *de novo* review, this Court will also directly review the agency's decision under a *de novo* review standard. *McCrary,* 112 N.C. App. at 165, 435 S.E.2d at 363 (citation omitted). We therefore proceed to examine the Commission's decision in compliance with these rules.

The Act awards compensation to victims of "criminally injurious conduct." N.C. Gen. Stat. § 15B-4(a) (1994). The Commission "assumed without conceding" for purposes of its decision that petitioner's "injury was the result of criminally injurious conduct," and denied petitioner's claim based upon N.C. Gen. Stat. § 15B-11(b) (1994). The statute provides:

[a] claim may be denied and an award of compensation may be reduced upon a finding of contributory misconduct by the claimant . . . .

G.S. § 15B-11(b).

However, petitioner maintains that "the act of Mr. Sineath was not reasonably foreseeable and therefore, by application of tort principles, [petitioner's attempt to steal the money] was not contributory misconduct" so as to justify reduction or denial of petitioner's claim under the statute. We believe petitioner misapprehends the purport of "contributory misconduct."

While "contributory misconduct" is not defined in the Act, this Court has previously interpreted the phrase. *Evans v. N.C. Dept. of Crime Control,* 101 N.C. App. 108, 118, 398 S.E.2d 880, 885 (1990), *temporary stay allowed,* 328 N.C. 271, 400 S.E.2d 446 (1991) (*temporary stay dissolved* 10 January 1991). "Misconduct" is behavior that is "unlawful or . . . breache[s] the standard of conduct acceptable to a reasonable person." *Id.* Further,

in order for [a] claimant's misconduct to be contributory [under the Act] it must combine with criminal action on the part of another to become a 'real, efficient and proximate cause of the injury.'

*Id.* at 117, 398 S.E.2d at 885 (citation omitted). A proximate cause is one which

> in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all facts as they existed.

*Id.* (quoting *Hairston v. Alexander Tank Equipment Co.*, 310 N.C. 227, 233, 311 S.E.2d 559, 565 (1984)).

The test under *Evans*, therefore, is two-pronged, that is, 1) was there misconduct on the part of petitioner and, if so, 2) was that misconduct a proximate cause of his injury?

In the case *sub judice*, it is undisputed that shortly before being injured, petitioner snatched money from a convenience store customer without authorization to do so and attempted to flee the store with the customer's money. Theft is an unlawful act; under *Evans*, "misconduct includes unlawful conduct as a matter of law." *Id.* at 117, 398 S.E.2d at 88. Utilizing the *de novo* standard, *McCrary*, 112 N.C. App. at 165, 435 S.E.2d at 363, we hold petitioner's stealing of twenty dollars from an unsuspecting store patron constituted misconduct and that the Commission's conclusion to this effect was not error.

Petitioner nonetheless argues the Commission found he had committed "robbery" and insists at length that he "was charged with committing larceny from the person" and not robbery. Assuming *arguendo* the Commission attached an erroneous label to petitioner's actions, the misstatement is *de minimis, see State v. Buckom*, 328 N.C. 313, 317, 401 S.E.2d 362, 365 (1991) (citation omitted) (larceny from the person differs from robbery only in that the former "lacks the requirement that the victim be put in fear"), and surplusage. The essential and relevant conclusion for purposes of the Act is that petitioner engaged in "misconduct"; as noted above, misconduct includes commission of an unlawful act and theft constitutes an unlawful act, whether accomplished by larceny or robbery.

Regarding the element of proximate cause, petitioner takes issue with the Commission's conclusion that "it was reasonably foreseeable to the Petitioner that his illegal acts could result in injury to himself." However, this Court in *Evans* pointed out that:

The test of foreseeability as an element of proximate cause does not require that the actor should have been able to foresee the injury in the precise manner in which it actually occurred.

*Evans*, 101 N.C. App. at 117, 398 S.E.2d at 885 (quoting *Adams v. Mills*, 312 N.C. 181, 193, 322 S.E.2d 164, 172 (1984)).

Therefore, petitioner need not necessarily have been able to foresee that his conduct would lead to his being shot, but only that "consequences of a generally injurious nature[] [were] probable under all the facts as they existed." *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 233, 311 S.E.2d 559, 565 (1984) (citations omitted). Indeed, in certain instances "the intervention of wrongful conduct may be the very risk" a person creates through his or her own misconduct, *id.* at 234, 311 S.E.2d at 565, and such intervention accordingly is foreseeable.

In this day and age, considering the circumstances of snatching a twenty-dollar bill from the hand of a customer in a convenience store and attempting to flee the premises with the money and a bottle of soda, only a thief lacking the most basic "ordinary prudence" would not reasonably foresee that "consequences of a generally injurious nature[] [were] probable under all the facts as they existed." *Id.* Petitioner's misconduct thus was a proximate cause of his injury. The Commission therefore did not err either in concluding petitioner's actions constituted "contributory misconduct" under the Act and or in its consequent decision to bar pursuant to G.S. § 15B-11(b) his claim for recovery of benefits under the Act.

---

The briefs of both parties also discuss whether petitioner's claim was barred by N.C. Gen. Stat. § 15B-11(a)(6) (1994), which provides "[a]n award of compensation shall be denied if . . . [t]he victim was participating in a felony or a nontraffic misdemeanor at or about the time that the victim's injury occurred." This subsection was added effective 28 February 1994 and retroactively applied to all pending claims or claims "in litigation on or after the date of ratification." North Carolina Crime Victims Compensation Act, ch. 3, sec. 2, 1994 E. Sess. 5, 6. Petitioner filed his Petition for Review with the Moore County Superior Court on 24 February 1994; his case was therefore in litigation at the time of ratification.

However, we note the question of the applicability of G.S. § 15B-11(a)(6) to petitioner's claim was not addressed in any manner below nor is it set out as an assignment of error in the record on

appeal. A contention in an appellant's brief not based upon an exception or assignment of error will not be reviewed by this Court on appeal. N.C.R. App. P. 10(b). Moreover, we have determined above that petitioner's claim was properly denied under terms of the Act less restrictive than provided in the Amendment. It is therefore both violative of our appellate rules as well as unnecessary to consider whether petitioner's recovery was also barred by G.S. § 15B-11(a)(6). Accordingly, we decline to do so.

Affirmed.

Judges COZORT and WALKER concur.