IN THE SUPREME COURT OF NORTH CAROLINA

No. 283A22-2

Filed 13 December 2024

IN THE MATTER OF:


PATRICIA BURNETTE CHASTAIN


Appeal pursuant to N.C.G.S. § 7A-30(2) (2023) from the decision of a divided panel of the Court of Appeals, 289 N.C. App. 271 (2023), affirming an order entered on 5 April 2022 by Judge Thomas H. Lock in Superior Court, Franklin County. On 15 December 2023, the Supreme Court allowed petitioner's and respondent's petitions for discretionary review as to additional issues. Heard in the Supreme Court on 19 September 2024.

> *Fox Rothschild LLP, by Kip D. Nelson and Elizabeth Brooks Scherer; and Davis, Sturges & Tomlinson, PLLC, by Conrad B. Sturges III, for petitioner-appellee.*
>
> *Zaytoun & Ballew, PLLC, by Matthew D. Ballew, Robert E. Zaytoun, and Zachary R. Kaplan, for respondent-appellant.*

RIGGS, Justice.

Clerks of the superior court are constitutional officers elected by qualified voters in the county where they serve. N.C. Const. art. IV, § 9(3). The North Carolina Constitution allows for removal of a duly-elected clerk "for misconduct or mental or physical incapacity by the senior regular resident Superior Court Judge serving the

county." N.C. Const. art. IV, § 17(4).

In this case, we consider the proper procedure for removal of a clerk in accordance with Article IV of the North Carolina Constitution. We hold that when the senior regular resident superior court judge is recused from the case and a replacement judge is commissioned to serve in that position for the removal proceeding, the replacement judge, serving in the official role of senior regular resident superior court judge in that matter, has the authority to remove the clerk. Further, we hold that procedural due process requires that the clerk only be subject to removal for conduct identified in the sworn affidavit that initiates the removal proceeding under N.C.G.S. § 7A-105. Lastly, we hold that removal of a clerk under Article IV is on the basis of the misconduct standard set forth in the plain language of Article IV, Section 17(4) of the North Carolina Constitution, not under the willful misconduct standard articulated in N.C.G.S. § 7A-105.

For these reasons, we vacate the decision of the Court of Appeals in *In re Chastain* (*Chastain II*), 289 N.C. App. 271 (2023), overrule the holding of *In re Chastain* (*Chastain I*), 281 N.C. App. 520 (2022), and remand the case for reconsideration of removal under Article IV not inconsistent with the standards established in this opinion.

## I.    Facts & Procedural Background

In May 2013, Patricia Burnette Chastain was appointed to the position of clerk of superior court in Franklin County. In the November 2013 election, the voters in

Franklin County elected her to a four-year term as clerk. She was reelected to a second term in 2017.

On 13 July 2020, Jeffrey Thompson, an attorney in Franklin County, requested "an inquiry be commenced by the Senior Resident Judge of the Ninth Judicial District to determine if it is appropriate to remove Ms. Chastain as Clerk of the Franklin County Superior Court." Mr. Thompson filed an affidavit pursuant to N.C.G.S. § 7A-105 (Charging Affidavit) identifying the specific incidents that motivated his desire for an inquiry. The Charging Affidavit accused Ms. Chastain of willful misconduct, willful and persistent failure to perform her duties, habitual intemperance, and conduct prejudicial to the administration of justice. Mr. Thompson alleged[1] in the Charging Affidavit that Ms. Chastain, acting in her official capacity as clerk: (1) distributed gift certificates for smoothies to jurors in a criminal case; (2) allowed a judicial candidate to address a jury venire[2]; (3) acted unprofessionally with correctional officers at the Franklin County Detention Center and demanded access to detainees; (4) injected herself in a property dispute without proper authority and attempted to mediate the dispute outside the presence of the parties' attorneys; (5) attempted to mediate a child custody dispute that she did not have jurisdiction over;

---

[1] Mr. Thompson acknowledged in his affidavit that he did not have first-hand knowledge of all the allegations; he clarified that the information in the affidavit was based upon information gained in his professional role, from his review of documents, and from information told to him by others.

[2] Prior to the removal hearing, District Attorney Michael D. Waters sent a letter to Ms. Chastain advising her of the impropriety of her actions and requesting that she refrain from any contact with jury venires.

(6) requested medical records on official judicial letterhead without authority to request the records; (7) failed to timely and accurately reconcile bank records and report on financial matters within the clerk's office; (8) made inappropriate comments about the chief magistrate to members of the public; and (9) kept irregular work hours and acted erratically while at work.

On the day the Charging Affidavit was filed, Judge John M. Dunlow, Franklin County's senior resident superior court judge, entered an order suspending Ms. Chastain and set the matter for a hearing on 6 August 2020. Ms. Chastain filed a motion to recuse Judge Dunlow and the only other Franklin County superior court judge, Cindy Sturges, from presiding over the removal inquiry because of their involvement in one of the incidents in the Charging Affidavit. Special Superior Court Judge J. Stanley Carmical granted the motion of recusal. Based upon the recusal of these judges, the Chief Justice of the Supreme Court of North Carolina commissioned Superior Court Judge Thomas H. Lock to preside over the removal inquiry.

Judge Lock held an evidentiary hearing on 28 through 30 September 2020. After considering the evidence, Judge Lock entered an order on 16 October 2020 (2020 Removal Order), permanently removing Ms. Chastain from her elected position as clerk based upon the removal procedures found in N.C. Const. art. IV, § 17(4) and N.C.G.S. § 7A-105. In the 2020 Removal Order, Judge Lock made findings of fact regarding the allegations in the Charging Affidavit. Additionally, Judge Lock made findings of fact about two allegations that were not included in the Charging

Affidavit. The additional allegations were: (1) Ms. Chastain frequently approached District Attorney Michael D. Waters on "behalf of citizens charged with traffic and minor criminal offenses and ask[ed] him to reduce or dismiss their charges"; and (2) Ms. Chastain frequently asked Chief District Court Judge W. Davis to strike orders for arrest. Judge Lock concluded that "[e]ven if Respondent's acts of misconduct viewed in isolation do not constitute willful misconduct, her knowing and persistently repeated conduct prejudicial to the administration of justice itself rises to the level of willful misconduct" and "warrant[ed] her permanent removal from the office" of Franklin County Clerk of Superior Court. Ms. Chastain appealed.

The Court of Appeals concluded that Article IV "confers on a single individual[ ], the authority to remove the elected Clerk in a county; namely, the senior regular resident Superior Court Judge in that same county." *Chastain I*, 281 N.C. App. at 523. For this reason, the Court of Appeals held that the replacement judge, Judge Lock, lacked authority to consider Ms. Chastain's removal under Article IV. *Id.* at 524. The Court of Appeals then considered "the other constitutional avenue by which a sitting Clerk may be removed," concluding that Ms. Chastain could "be removed from her current term as a consequence of being disqualified from holding any office under Article VI [if] she is adjudged guilty of corruption or malpractice in any office." *Id.* at 524–25 (cleaned up). The court went on to define "corruption and malpractice," ultimately holding that "acts of willful misconduct which are egregious in nature" constitute "corruption or malpractice" under Article VI. *Id.* at 528 (citing

*In re Peoples,* 296 N.C. 109 (1978)). The Court of Appeals vacated the order and remanded for reconsideration of whether Ms. Chastain's conduct rose to the level of corruption or malpractice under Article VI. *Id.* at 530.

On remand, Judge Lock entered a new order on 5 April 2022 (2022 Removal Order), concluding Ms. Chastain was "permanently disqualified from serving in the Office as Clerk of Superior Court of Franklin County." Judge Lock concluded that "[e]ven if Respondent's acts of misconduct viewed in isolation do not constitute willful misconduct, her knowing and persistently repeated conduct prejudicial to the administration of justice itself rises to the level of willful misconduct [and] is equivalent to corruption or malpractice under Article VI of the Constitution of North Carolina and warrants permanent disqualification from office." Ms. Chastain again appealed to the Court of Appeals.

During the second appeal, a divided panel at the Court of Appeals affirmed the 2022 Removal Order, holding that the findings of fact supported the conclusion that Ms. Chastain's conduct rose to the level of corruption or malpractice. *Chastain II*, 289 N.C. App. at 291. The majority, however, went on to note its disagreement with the holding in *Chastain I. Id.* at 292. Specifically, the majority in *Chastain II* opined that Article VI, Section 8, "concerns disqualification for office, not removal from office," *id.* at 292, and thus the *Chastain II* majority did not believe removal from office would be proper under Article VI, *id.* at 294. Instead, the majority in *Chastain II* believed that the Court of Appeals in *Chastain I* should have remanded the matter

for further proceedings by Judge Dunlow under Article IV. *Id.* 294–95. Notwithstanding that disagreement, the *Chastain II* majority proceeded, consistent with *In re Civil Penalty*, 324 N.C. 373, 384 (1989), and followed the *Chastain I* decision on Article VI. *Id.*

Judge Wood dissented from the holding that Ms. Chastain's conduct rose to the level of corruption or malpractice. *Id.* at 300 (Wood, J., dissenting). In her view, Ms. Chastain's conduct was "not *egregious* as to merit her disqualification and removal from the elected office of Clerk of Superior Court" under Article VI. *Id.*

Ms. Chastain appealed to this Court based on Judge Wood's dissent. We also allowed Ms. Chastain's petition for discretionary review as to additional issues and Mr. Thompson's petition for discretionary review as to additional issues.

## II. Analysis

This case addresses the proper procedure for the removal of a duly-elected clerk of superior court. At the outset, we acknowledge that the Court of Appeals in *Chastain II* was bound to consider whether Ms. Chastain's removal was proper under Article VI based upon the earlier Court of Appeals' decision in *Chastain I*, as opposed to revisiting the decision about Article IV removal. *Chastain II*, 289 N.C. App. at 274; *see also In re Civ. Penalty*, 324 N.C. at 384 ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.").

However, we do not agree with the Court of Appeals' holding in *Chastain I* that the "only individual" with authority under Article IV to remove Ms. Chastain was Judge Dunlow, Franklin County's senior regular resident superior court judge. *Chastain I*, 281 N.C. App. at 523. The Constitution designates the senior regular resident superior court judge as the judicial officer with the authority to preside over a removal proceeding when charges are brought against a clerk. N.C. Const. art. IV, § 17(4). Because that proceeding is judicial in nature, when the senior resident superior court judge has a conflict of interest and cannot fairly conduct that proceeding, the judicial branch may designate another superior court judge to preside. Therefore, when Judge Dunlow was recused from the matter and Judge Lock was commissioned to replace him, Judge Lock had the constitutional authority under Article IV to preside over the removal hearing.

Next, in both *Chastain I* and *Chastain II*, the Court of Appeals recognized that removal of a clerk is only proper based upon allegations put forth in the affidavit that initiates the proceeding. *Chastain I*, 281 N.C. App. at 528–29; *Chastain II*, 289 N.C. at 277–78. We affirm the determination that removal under Article IV is only properly based upon allegations identified in the affidavit that initiates the removal process per N.C.G.S. § 7A-105.

Lastly, neither *Chastain I* nor *Chastain II* laid out the proper standard for removal under Article IV. We clarify that the proper standard for the removal of a clerk under Article IV is misconduct—as stated in the Constitution—rather than the

willful misconduct standard identified in N.C.G.S. § 7A-105. *See* N.C.G.S. § 7A-105 (2023). On remand, Judge Lock should consider whether removal is proper based upon the standard for misconduct described below.

## A. Article IV Removal Hearing

A clerk of superior court is an elected constitutional and judicial officer with "jurisdiction and powers as the General Assembly shall prescribe by general law uniformly applicable to every county of the State." N.C. Const. art. IV, §§ 9(3), 12(3). The Constitution also sets forth conditions under which an elected clerk may be removed from office; clerks "may be removed from office for misconduct or mental or physical incapacity by the senior regular resident Superior Court Judge serving the county." N.C. Const. art. IV, § 17(4).

In *Chastain I*, the Court of Appeals interpreted the language in Section 17(4) to "confer on a single individual[ ], the authority to remove the elected Clerk in a county" and "no other judge may be conferred with jurisdiction over the subject matter of removing a Clerk for misconduct under Article IV." *Chastain I*, 281 N.C. App. at 523. However, "issues concerning the proper construction and application of . . . the Constitution of North Carolina can only be answered with finality by this Court." *State ex rel. Martin v. Preston*, 325 N.C. 438, 449 (1989). In interpreting our Constitution, where the meaning is clear from the words, there is no need to search for meaning elsewhere. *Id.* When interpreting the "clemency power" granted to the Governor under Article III, Section 5(6) of the Constitution, this Court held that only

the Governor, and no other executive branch official, can exercise the power of clemency. *Bacon v. Lee*, 353 N.C. 696, 718 (2001). In *Bacon*, a death row inmate sought to have the Governor—who was involved in prosecuting the inmate's criminal case—delegate the clemency power to the Lieutenant Governor, who had no potential conflict of interest. *Id.* In rejecting this request, this Court held that "only the Governor . . . may exercise the clemency authority established by the people of North Carolina in their Constitution." *Id.*

Following this reasoning, the Court of Appeals in *Chastain I* held that only the senior regular resident superior court judge serving Franklin County could conduct the removal proceeding in this case and, if that judicial official could not do so, no other judge could replace him. However, examining Article IV, Section 17(4), within the structure of Article IV as a whole explains why the analogy to the executive's clemency power does not answer the question here.

The position of "senior regular resident Superior Court Judge"[3] appears three times in Article IV. *See* N.C. Const. art. IV, §§ 9(3), 10, 17(4). The first two provisions grant the senior regular resident superior court judge the power to appoint other public officials: allowing appointment of a temporary clerk, *id.* art. IV, § 9(3); and allowing appointments of magistrates, *id.* art. IV, § 10. The third provision—removal of a clerk of superior court—is at issue in this case. *Id.* art. IV, § 17(4).

---

[3] In Section 17, the position is styled as senior regular resident Superior Court Judge. In Sections 9 and 10, the position is styled as senior regular resident Judge of the Superior Court.

In each provision, the constitution provides the senior resident superior court judge with special authority that would not function unless only one person could wield it at any given time. *See id.* But unlike the other two provisions—which grant appointment power—the removal proceeding in Section 17(4) of Article IV requires the judge to preside over a hearing and enter a judgment according to law. *Id.* In other words, it requires the judge to wield the judicial power. When adjudicating cases, all superior court judges are judicial officers of the Superior Court Division of our General Court of Justice. *See id.* art. IV, § 2. Thus, in this context, the senior regular resident superior court judge has no unique constitutional power greater than other judges of the superior court. *See also* N.C.G.S. § 7A-41.1(c) (2023) ("Senior resident superior court judges and regular resident superior court judges possess equal judicial jurisdiction, power, authority and status[.]").

Article IV, Section 17 of the Constitution does not limit the authority to preside over a clerk's removal proceeding to a single judge in the same way that Article III, Section 5 limits the clemency power solely to the Governor. Instead, Section 17 of Article IV identified the position of senior regular resident superior court judge serving the county as the default judicial officer who must adjudicate charges brought against a clerk of superior court under Article IV. *Id.* art. IV, § 17(4). But in a circumstance where that superior court judge has a conflict of interest and cannot fairly hear the case, the judicial branch may substitute another superior court judge of the General Court of Justice to preside over the proceeding and enter the judgment

of the trial division. *See* N.C. Const. art. IV, § 9(1) (granting the General Assembly the authority to provide by general law for the selection or appointment of special or emergency Superior Court Judges); *see also* N.C.G.S. § 7A-41.1(e) (providing the Chief Justice the authority to appoint an acting senior resident superior court judge when the regular senior resident superior court judge is unable to perform their duties).

That is the scenario in this case. When Judge Dunlow was recused from this case, the Chief Justice exercised her authority to appoint Judge Lock as the superior court judge authorized to preside over the matter. Accordingly, we hold that Judge Lock properly had the constitutional authority to preside over the Article IV removal proceeding in this case.

The Court of Appeals went on to acknowledge that where the disqualification of a judge "would result in a denial of a litigant's constitutional right to have a question properly presented" to a court of last resort, then the Rule of Necessity operates to allow a judge to hear a matter notwithstanding that their participation may violate a judicial ethical canon. *Chastain I*, 281 N.C. App. at 523 (quoting *Lake v. State Health Plan for Tchrs. & State Emps.*, 376 N.C. 661, 664 (2021)). But here Judge Dunlow's recusal would not deny Ms. Chastain her constitutional right to have the removal question presented to the court. The Chief Justice has authority to appoint a judge to step into the position of senior regular resident superior court judge to preside over the removal hearing. Because Judge Dunlow was recused and Judge

Lock was properly appointed, Judge Lock had jurisdiction to preside over the Article IV removal proceeding.

**B. Due Process for the Removal Proceeding**

Having concluded that Judge Lock had subject matter jurisdiction over the Article IV removal proceeding, we turn our attention to the question of whether removal under Article IV can only be based upon acts identified in the affidavit used to initiate the proceeding. *See* N.C.G.S. § 7A-105 (mandating that "the procedure shall be initiated by the filing of a sworn affidavit with the chief district judge of the district in which the clerk resides"). A proceeding resulting in the removal of an elected public official must afford the individual all the benefits of due process of law. *In re Spivey*, 345 N.C. 404, 413–14 (1997) (concluding that the North Carolina Constitution does not prohibit the General Assembly from enacting a statutory method of removal so long as the removal process provides due process of law). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *McLean v. McLean*, 233 N.C. 139, 146 (1951) (quoting *Mullane v. Cent. Hanover Bank & Tr., Co.*, 339 U.S. 306, 314 (1950)).

Because a removal proceeding is neither a civil nor criminal proceeding, the only notice a respondent receives of the removal proceeding is the affidavit that initiates the process. *See* N.C.G.S. § 7A-105 (outlining the procedures for removal of

a clerk and incorporating by reference the requirements for removal of a district attorney under N.C.G.S. § 7A-66); *see also* N.C.G.S. § 7A-66 (2023) (outlining the procedures for removal of district attorneys). The statutory process designates that the affidavit which initiates the proceeding must state the grounds for removal. N.C.G.S. § 7A-66 ("A proceeding . . . is commenced by filing . . . a sworn affidavit charging . . . one or more grounds for removal."). Additionally, the General Assembly requires "immediate written notice of the proceedings and a true copy of the charges" and that "the matter shall be set for hearing not less than 10 days nor more than 30 days thereafter." *Id.* So long as the statutory language does not conflict with the Constitution, we presume that the procedure set forth in the statute is valid. *See State ex rel. Martin*, 325 N.C. at 448–49 ("All power which is not expressly limited by the people in our State Constitution remains with the people, and an act of the people through their representatives in the legislature is valid unless prohibited by that Constitution.").

Ms. Chastain argues that the 2020 and the 2022 Removal Orders relied upon acts not identified in the Charging Affidavit as some partial basis for removal. The Court of Appeals in *Chastain I* agreed with Ms. Chastain as to the 2020 Removal Order and concluded that reliance on "acts that were not alleged in [the Charging Affidavit] violated Ms. Chastain's due process rights." *Chastain I*, 281 N.C. App. at 529. The Charging Affidavit contained a long list of alleged misconduct, including nine specific incidents where Mr. Thompson asserted that Ms. Chastain acted in a

manner constituting willful misconduct, willful and persistent failure to perform her duties, habitual intemperance, and conduct prejudicial to the administration of justice. As part of the removal proceeding, Judge Lock made more than thirty findings of fact about the allegations identified in the Charging Affidavit.[4]

However, during the removal hearing, Judge Lock also heard testimony and made findings about two additional allegations of misconduct that were not identified in the Charging Affidavit. Those allegations were that Ms. Chastain asked the district attorney to reduce or dismiss charges for traffic and minor criminal offenses and that Ms. Chastain asked the chief district court judge to strike orders for arrest. Relying on allegations not proffered in the Charging Affidavit does not comport with the procedures for removal of a clerk set forth by the General Assembly; specifically, our statutes require that the grounds for removal are identified in the sworn affidavit that initiates the removal proceeding. *See* N.C.G.S. §§ 7A-105, -66.

In a removal proceeding, which by statute must commence within thirty days after the filing of the affidavit, respondents must have notice of all allegations in the affidavit so that they can mount a defense against those allegations. Therefore, on remand, Judge Lock may only consider the allegations in the Charging Affidavit as grounds for removal under Article IV.

---

[4] The trial court noted in the order that the affiant expressly abandoned the allegation of irregular work hours and intemperance and that the affiant did not provide any evidence in support of the allegations of "interference in a child custody case" and "unauthorized demands for medical records." Therefore, those allegations were not considered as bases for the removal.

## C. Standard for Removal Under Article IV

Lastly, we consider the standard for the removal of a clerk of superior court under Article IV. Section 17(4) of Article IV states that a clerk "may be removed from office for *misconduct* or mental or physical incapacity." N.C. Const. art. IV, § 17(4) (emphasis added). Notably, subsection four does not use the "willful misconduct" standard which is used in Section 17(2) of Article IV, addressing removal of judges and justices. *See* N.C. Const. art. IV, § 17(2). The statutory procedure for removal or suspension of a clerk, though, identifies that higher standard for removal—willful misconduct—as the applicable standard. N.C.G.S. § 7A-105. However, when "there is a conflict between a statute and the Constitution, this Court must determine the rights and liabilities or duties of the litigants before it in accordance with the Constitution, because the Constitution is the superior rule of law in that situation." *City of Asheville v. State*, 369 N.C. 80, 88 (2016) (quoting *Adams v. N.C. Dep't of Nat. & Econ. Res.*, 295 N.C. 683, 690 (1978)). The constitutional language controls and, therefore, removal of a clerk under N.C. Const. art. IV, § 17(4) and N.C.G.S. § 7A-105 may be based upon misconduct, even if that conduct would not rise to the level of willful misconduct.

Nevertheless, this Court has not defined "misconduct" in the context of removal of a clerk under Article IV. The Court of Appeals, in the context of the Crime Victims Compensation Act, looking at whether a claimant's own misconduct was a proximate cause of his or her injury, recognized that misconduct is conduct "not within the

accepted norm or standard of proper behavior." *Evans v. N.C. Dep't of Crime Control & Pub. Safety*, 101 N.C. App. 108, 117 (1990). "While misconduct includes unlawful conduct as a matter of law, it may be something less than unlawful conduct, though more than an act done in poor taste." *Id.* In the context of the removal of a prosecutor, this Court recognized that misconduct includes the "official doing of a wrongful act, or the official neglect to do an act which ought to have been done" even without a corrupt or malicious motive. *State ex. rel. Hyatt v. Hamme*, 180 N.C. 684, 688 (1920). These definitions align with the definition of misconduct found in Black's Law Dictionary: "dereliction of duty; unlawful, dishonest, or improper behavior, esp. by someone in a position of authority or trust." *Misconduct*, Black's Law Dictionary (12th ed. 2024). Applying these standards to the constitutional office of clerk of superior court, we conclude that misconduct for a clerk is wrongful, unlawful, dishonest, or improper conduct performed under the color of authority for the clerk of superior court as identified in N.C.G.S. § 7A-103. *See* N.C.G.S. § 7A-103 (2023) (outlining the authority of clerk of superior court).

Because the 2020 Removal Order is not before us, we do not simply reinstate that order. Nor do we suggest that the 2020 Removal Order, without factual findings on acts not identified in the Charging Affidavit, is necessarily inconsistent with this opinion. Thus, we remand this case to the Court of Appeals for further remand to Judge Lock to consider, consistent with this opinion, whether the findings of fact demonstrate misconduct sufficient to justify removal.

## D. Disqualification of a Clerk Under Article VI

In his petition for discretionary review, Mr. Thompson asked this Court to outline the governing legal and procedural standard for removal under Article IV, Section 17(4), and disqualification under Article VI, Section 8, for a clerk of superior court. *See* N.C. Const. art. IV, § 17(4); N.C. Const. art. VI, § 8. Because we hold that Judge Lock has the authority to consider removal under Article IV, we do not need to consider the question of the proper legal and procedural standard for disqualification of a clerk under Article VI. We decline to reach that question until it is properly presented to this Court. Accordingly, we conclude that the petition for discretionary review as to the issue of the proper procedure for disqualification under N.C. Const. art. VI, § 8, was improvidently allowed.

### III. Conclusion

In sum, we hold that after Judge Lock was commissioned to oversee the removal proceeding, he assumed the position of senior regular resident superior court judge for Article IV, Section 17(4) purposes and therefore, had authority to consider the removal of Ms. Chastain under N.C. Const. art. IV, § 17(4). Furthermore, procedural due process requires that removal only be based upon incidents identified in the sworn affidavit that initiates the removal procedure pursuant to N.C.G.S. § 7A-105. Lastly, we affirm that the standard for removal of a clerk under Article IV as set forth in the Constitution is misconduct. For these reasons, we overrule the holding in *Chastain I*, 281 N.C. App. 520, that Judge Lock did not have jurisdiction

to remove Ms. Chastain under N.C. Const. art. IV, § 17(4). Additionally, we vacate the Court of Appeals' decision in *Chastain II,* 289 N.C. App. 271.

We remand the case to the Court of Appeals with instructions to further remand to Judge Lock for consideration of whether removal is proper under N.C. Const. art. IV, § 17(4) based upon the incidents identified in the Charging Affidavit and the standard for removal set forth in this opinion. Judge Lock retains the discretion to determine whether an additional hearing is necessary on this matter. Lastly, we note that discretionary review was improvidently allowed as to the proper procedure and guidelines for disqualification of a clerk of superior court under N.C. Const. art. VI, § 8.

VACATED AND REMANDED IN PART; DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED IN PART.

Justice ALLEN did not participate in the consideration or decision of this case.