## McMILLAN v CRIME VICTIMS COMPENSATION BOARD

Docket No. 84998. Submitted March 18, 1986, at Lansing. Decided October 8, 1986.

James R. McMillan filed a claim for compensation under the crime victims compensation act for losses incurred as a result of being shot while in an unlicensed "after hours" bar. The incident occurred when the claimant approached a woman, asked her to dance and was told by the woman's husband to keep away from her. The claimant commented on the husband's use of obscenities and was shot by the husband. Respondent Crime Victims Compensation Board denied the claim after finding that the claimant contributed substantially to the infliction of his injury by being present in the bar, a misdemeanor offense. Claimant appeals by leave granted.

The Court of Appeals *held*:

1. Each case in which the claimant has engaged in some possible peripheral criminal conduct that may have been connected with his injury must be decided, on a case-by-case basis, in the light of its particular facts. A proximate cause analysis should be applied in determining whether a victim "contributed to the infliction of his injury" by his violation of a criminal statute. If the risk that injury would result from the particular violation of a criminal statute is foreseeable and not too remote, then the board can deny or reduce the award. If the risk is very remote and unforeseeable, the board cannot deny or reduce his award.

2. The board erred in finding that claimant contributed to the infliction of his own injury by being present in the unlicensed bar.

3. The claimant's actions in asking the woman to dance and commenting on her husband's obscene language did not contribute to the infliction of his injury.

Reversed and remanded.

REFERENCES

Am Jur 2d, Criminal Law §§ 1051-1058.

Statutes providing for governmental compensation for victims of crime. 20 ALR4th 63.

CRIMINAL LAW — CRIME VICTIMS COMPENSATION ACT — VICTIM'S
    VIOLATION OF STATUTE — CONTRIBUTION TO INJURY.

> A proximate cause analysis is applied in determining, on a case-
> by-case basis, whether a victim who is seeking compensation
> under the crime victims compensation act has contributed to
> the infliction of his injury as a result of the victim's violation of
> a criminal statute at the time of the incident causing the
> injury; the Crime Victims Compensation Board may deny or
> reduce an award to the victim where the risk that injury would
> result from the victim's particular violation of a criminal
> statute is foreseeable and not too remote and the board may
> not deny or reduce an award where such risk was very remote
> and unforeseeable (MCL 18.361[4]; MSA 3.372[11][4]).

*James Edward Jacobs,* for claimant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Eugene Krasicky,* First Assistant Attorney General, and *Michael J. Fraleigh,* Assistant Attorney General, for respondent.

Before: BEASLEY, P.J., and D. E. HOLBROOK, JR., and L. F. SIMMONS,* JJ.

BEASLEY, P.J. Claimant, James R. McMillan, filed for compensation under the crime victims compensation act,[1] seeking to recover his medical and other out-of-pocket losses incurred as a result of being shot in the leg. A member of the respondent, Crime Victims Compensation Board, reviewed claimant's application and denied the claim, finding that claimant had, by his own conduct, "contributed substantially to the infliction of the injury."[2] Upon claimant's timely application, the full crime victims board conducted an evidentiary hearing in this matter and subsequently affirmed the original denial of the claim, expressly finding that claimant had contributed substan-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] MCL 18.351 *et seq.;* MSA 3.372(1) *et seq.*

[2] MCL 18.361(4); MSA 3.372(11)(4).

tially to the infliction of his injury. Claimant appeals to this Court by leave granted.[3]

The compensation of crime victims statute was enacted in 1977. Earlier, in 1974, the American Bar Association had approved in principle the Uniform Crime Victims Reparations Act promulgated by the National Conference of Commissioners on Uniform State Laws in 1973, which furnished the starting point for the Michigan statute.[4]

The statute grew out of the national awareness that greater attention must be given to victims of and witnesses to crime. Too often victims and witnesses were treated only as "pieces of evidence" and sometimes it seemed that more effort was devoted to protecting the rights of the criminal than to the well-being of his victims. One tangible form that this awareness took was compensation to the victims of crime for out-of-pocket losses as defined in the statute.[5]

In Michigan, the statute places greater limitations upon qualifying for benefits than does the uniform act. Also, the Michigan program has, from the beginning, suffered from under-funding. In fact, in the Legislature, the Michigan statute that was enacted was a compromise between those opposed to any public reimbursement of crime victims and those favoring such payments. Often, the commission has seemed to decide claims with one eye on the Legislature's annual appropriations.

The issue in the within case is whether claimant's presence in an unlicensed bar, a misde-

---

[3] MCL 18.358(1); MSA 3.372(8)(1).

[4] See *Victim—Witness Legislation: Considerations for Policymakers*, prepared by the Victim Witness Assistance Project of the American Bar Association Section of Criminal Justice (1981).

[5] The most recent manifestation of these concerns is the Crime Victim's Rights Act, 1985 PA 87; MCL 780.751 *et seq.*; MSA 28.1287(751) *et seq.*

meanor offense under MCL 750.167(1)(j); MSA 28.364(1)(j), and his conduct in the unlicensed bar at the time of the shooting that caused his injuries, provide a basis for denying his claim for compensation under the crime victims compensation act. Since the crime victims compensation statute is remedial in nature, we afford it liberal construction in questions of coverage.[6] The facts surrounding the crime that caused claimant's injuries are not in serious dispute. Claimant entered an unlicensed "after hours" bar at about 2:30 A.M. on June 15, 1984. Approximately one hundred other people were inside the bar. He noticed and observed two women sitting alone in the bar. A man whom he did not know, and who was later identified as Charles Hill, eventually approached the two women and sat down at their table. Claimant then approached the same table and asked one of the women to dance. Hill informed him that the woman was his wife. Claimant told Hill that he hadn't known the woman was his wife. Hill, using obscenities, then warned him to keep away from his wife. Claimant asked Hill if he talked to his wife that way. At this point, Hill pulled out a pistol. When claimant saw the pistol he began to flee, but Hill shot him in the leg. Police officers arrived on the scene, had claimant taken to the hospital and completed a report concerning the shooting.

After reviewing these facts, the full Crime Victims Compensation Board concluded:

> The claimant was a customer of an unlicensed establishment that was selling liquor after two o'clock in the morning. The owner of said establishment pled guilty to sale or traffic in alcohol

[6] *Jerome v Crime Victims Compensation Bd,* 419 Mich 161; 350 NW2d 239 (1984).

without a license contrary to Section 436.32, C.L. 1970; MSA 18.1003. The injury occurred within the establishment.

The above facts render the claimant ineligible to receive compensation for injuries incurred, as his presence at and participation in the activities of that establishment constitute a substantial contribution on his part to the infliction of injuries incurred there.

On appeal, claimant argues that the facts of his mere presence in an unlicensed bar and of his innocent acts of approaching the two women and talking to Hill in the bar do not provide a basis for a finding that he "contributed to the infliction of his injury" which would allow a denial of his claim under MCL 18.361(4); MSA 3.372(11)(4). Thus, the resolution of this case requires this Court, for the first time, to interpret the language in the above statute which allows denial or reduction of an award to a crime victim when the victim "contributed to the infliction of his injury."

In *Jerome v Crime Victims Compensation Board*,[7] the Michigan Supreme Court recently interpreted the language of the crime victims compensation act. While noting that the crime victims compensation act is a remedial act that generally requires liberal construction, the Court referred to the fact that the act is narrow in scope and offers relief otherwise not available from the state only as a last resort.[8] In reaching this conclusion, the *Jerome* Court noted the various restrictive provisions of the act. A victim must demonstrate that a failure to provide compensation would result in a serious financial hardship in light of all of the

---

[7] See n 6, *supra.*

[8] *Id.,* p 164.

victim's financial resources.[9] Only crimes involving personal injury are covered,[10] and an award must be reduced by the amount covered by insurance, restitution, or other public funds.[11] The *Jerome* Court also expressly noted the statutory restriction at issue in this case by stating that if one who is injured has contributed to the injury, the award must be reduced or denied.[12] Further, we note that the narrow scope of the act is evidenced by the statutory provision limiting the maximum possible award under the act to $15,000.[13] As indicated, in practice, the Legislature has funded the program with annual appropriations that are small when viewed against the heavy volume of crime.

In light of the narrow scope of the act, the *Jerome* Court concluded that the board and this Court had not clearly erred in concluding that the term "other services" in MCL 18.361(1); MSA 3.372(11)(1) refers only to services directly related to assisting the victim's recovery from personal injury and does not include services such as child care and housekeeping. However, the *Jerome* Court went on to hold that the board and this Court had erred in concluding that the term "loss of support" in MCL 18.361(2); MSA 3.372(11)(2) refers only to loss of monetary support, stating:

> The plain language of the statute does not limit "support" to tangible monetary support as the Court of Appeals found. Rather, we are persuaded that "support" may include the very kind of services at issue in the instant case, *i.e.*, child care and housekeeping, and that money spent to replace such services is reimbursable to an eligible

---

[9] MCL 18.361(5); MSA 3.372(11)(5).
[10] MCL 18.360(b); MSA 3.372(10)(b).
[11] MCL 18.361(3); MSA 3.372(11)(3).
[12] *Jerome, supra,* p 164.
[13] MCL 18.361(1); MSA 3.372(11)(1).

claimant who can prove the requisite need. Such
an interpretation fulfills the legislative intent to
aid the families of crime victims who suffer serious
financial hardship as a result of the victim's
death."[14]

We believe that *Jerome* clearly indicates that
the narrow scope of coverage of the act, as de-
scribed in *Jerome,* does not require an interpreta-
tion so restrictive as to thwart the legislative
intent to aid crime victims. Therefore, in this case,
we reject the board's interpretation of the statu-
tory term "contributed to the infliction of his
injury." The board, under its interpretation, holds
that anytime a claimant violates any criminal
statute and the violation of the criminal statute is
in any way a cause in fact of the claimant's injury,
the claimant has "contributed to the infliction of
his injury." Such an interpretation would lead, in
some situations, to results that would appear to be
contrary to the Legislature's intent to aid certain
crime victims who are not blameworthy in causing
their injuries. We do not believe that the Legisla-
ture, through MCL 18.361(4); MSA 3.372(11)(4),
intended to prohibit recovery to a crime victim
who was not in any way truly blameworthy for his
injury.

We also reject the other possible extreme literal
interpretation of the term "contributed to the
infliction of his injury" that would require an
injured person to have contributed to the actual
act of inflicting his injury before being denied
recovery. Under this other interpretation, the in-
jured person would have to have helped pull the
trigger or thrust the knife which caused his injury
in order to allow the board to reduce or deny an
award. We do not believe the Legislature intended

---

[14] *Jerome, supra,* pp 165-166.

either extreme result in using the term "contributed to the infliction of his injury."

Rejecting these somewhat extreme interpretations of the statutory term in question leaves us in a situation where each case in which the claimant has engaged in some possible peripheral criminal conduct that may have been connected with his injury must be decided in the light of its particular facts.

In deciding such cases on a case-by-case basis, there are some general guiding principles which the board can follow in applying MCL 18.361(4); MSA 3.372(11)(4). The determination of whether a victim "contributed to the infliction of his injury" involves an assessment of the particular factual situation similar to that used in determining whether a defendant's negligent acts were a proximate cause of a plaintiff's injuries. The test used in determining proximate cause involves assessing the foreseeability that the injury would result from the defendant's acts. If the injury which resulted from the defendant's acts is deemed too remote or unforeseeable, the defendant's acts are not held to be a proximate cause of the injury and the plaintiff cannot recover damages from defendant.

We believe this general proximate cause analysis should be applied in determining whether a victim "contributed to the infliction of his injury" by his violation of a criminal statute. If the risk that the victim's injury would result from his particular violation of a criminal statute is foreseeable and not too remote, then the board should be allowed to deny or reduce his award under the statute. However, if the risk of injury due to the victim's particular type of violation of a criminal statute is very remote and unforeseeable, the

board cannot deny or reduce his award under the statute.

In applying the general proximate cause type of foreseeability test to the facts of this case, we believe the board erred in finding that the claimant contributed to the infliction of his own injury. His violation of a criminal statute in this case merely involved his knowing presence in an unlicensed bar. The risk of being shot while merely present in an unlicensed bar is too remote and unforeseeable to hold him blameworthy in any way for his injuries.

In this case, the obvious, proximate, direct cause of claimant's injury was being shot by Hill. While it is true that claimant would not have been injured "but for" having gone to the "blind pig," it can be said his presence there was no more the cause of his injury than would his presence on a public street have been the cause if he had been shot by Hill on a public street. There is no apparent basis for saying that presence in a blind pig makes one more likely to be shot than presence on a public street at 2:30 A.M. in the morning. Thus, these analogies would seem to indicate that claimant's mere presence in the blind pig did not "contribute" to his injury.

Thus, as a matter of judicial policy, we do not choose to treat claimant's illegal presence in the bar as a "proximate cause" of his injuries, since a gunshot injury was not a reasonably foreseeable risk of his act of entering an unlicensed bar. Therefore, we conclude that he did not "contribute to the infliction of his injury," for purposes of the statute, by being present in the unlicensed bar, and the board erred in denying his claim on this basis.

In reaching our conclusion, we distinguish the main case relied on by the board in this appeal. *In*

*re McNeil*[15] involved the interpretation of an Ohio crime victims compensation act provision which is analogous to MCL 18.361(4); MSA 3.372(11)(4). However, the Ohio provision differs from the Michigan statute in that it does not require the victim to "contribute to the infliction of his injury," but merely requires him to engage in "contributory misconduct." Furthermore, the victim in *McNeil* had actively engaged in prostitution activity, which certainly would require a separate assessment under the foreseeability test we have formulated herein from the one performed in this case where claimant was merely a patron in an unlicensed bar. The foreseeability of the risk of injury while actively engaging in prostitution, depending on the particular factual situation, appears much more likely than in the situation where the victim is merely present in an unlicensed bar.

On appeal, the board here extends its extreme interpretation of the statute even farther and argues that even if claimant's violation of a criminal statute does not allow it to deny an award to him under the statute, the conduct of claimant in talking to Hill does. We do not believe that claimant contributed to the infliction of his injury by approaching the table where Hill and the two women were seated, asking one of the women to dance and commenting on Hill's obscenities. This presents a classic situation where a person is an innocent victim of a criminal act, such as when a person walks along a dark street and is attacked. Although such a victim may be said to have, in some way, "contributed to the infliction of his injury" by walking along a dark street, we do not believe the Legislature intended to deny an award to such a crime victim. Similarly, the Legislature did not intend to deny an award to a person who is

---

[15] 6 Ohio Misc 2d 12; 453 NE2d 1309 (1983).

shot when he mistakenly asks another man's wife to dance while in a bar and then merely comments on the man's obscene language.

Based on our above findings, we conclude that it is necessary to remand this case to the board for a determination of whether claimant meets the other requirements necessary for an award under the crime victims compensation act.

Reversed and remanded.