**In re SVOBODA.**

Court of Claims of Ohio,
Victims of Crime Division.

No. V96–21799.

Decided May 30, 1997.

*David Ian Jaffe*, for the applicant.

*Betty D. Montgomery*, Attorney General, for the state.

OPINION AND ORDER OF THREE-COMMISSIONER PANEL.

This appeal came to be heard before this panel of three commissioners on April 17, 1997 upon applicant Frank J. Svoboda's February 10, 1997 objection to the January 31, 1997 decision of the single commissioner.

The single commissioner denied the applicant's claim pursuant to R.C. 2743.52(A), based on finding that the applicant failed to prove, by a preponderance of the evidence, that criminally injurious conduct occurred.

The applicant, the applicant's counsel, and the Attorney General attended the hearing and presented testimony and oral argument for this panel's consideration.

The applicant testified that the offender, who is the applicant's rear neighbor, came to the applicant's house and stated that the applicant's dogs were in the offender's yard and that the offender was going to kill them. The applicant stated that he stepped outside about twelve feet on his way to view the dogs when the applicant's daughter stated that the dogs were in their cages. The applicant testified that he had turned around to listen to his daughter, and when the applicant turned back around, the offender struck the applicant in the face.

The applicant further testified that he fell to the ground as a result of the blow and suffered injuries to his back, neck, and shoulder, and broke his glasses. The applicant was transported to the hospital by ambulance.

The applicant further testified that his brother, Dennis Svoboda, was present during the incident. The applicant stated that his brother was not available to testify at the hearing because he lives in Florida; however, the file contains an August 2, 1996 letter from the applicant's brother. The letter states that Dennis Svoboda was visiting the applicant in Cleveland to assist in some home repairs. The events revealed in the letter are consistent with the applicant's testimony with one exception: the letter states that, upon being struck by the offender, the applicant lunged at the offender, and threw him to the ground. The letter further states that the applicant "continued to defend himself against his aggressor until he subdued Mr. Mondry. Once Mr. Mondry quit struggling Mr. Svoboda terminated his defensive posture and Mr. Mondry walked off in the direction of his residence."

The applicant consistently denied provoking the offender.

Upon cross-examination by the Attorney General, the applicant revealed that he had been arrested on June 17, 1995, approximately one month prior to the criminally injurious conduct, for aggravated menacing with regard to the offender. The applicant also indicated that he filed stalking charges against the offender prior to the criminally injurious conduct. In response to the Attorney General's inquiry as to whether the applicant and the offender routinely called police on each other, the applicant replied that the offender had attacked the applicant's wife while she was in her car and harassed the applicant's daughter.

It is the applicant's position that the testimony provided at the hearing demonstrates that criminally injurious conduct occurred. The applicant further asserts that he did not engage in contributory misconduct because the offender struck first, and any aggression demonstrated by the applicant was in self-defense.

The Attorney General maintains that there was no criminally injurious conduct because the parties engaged in mutual combat. The Attorney General relies on the police documentation in the file, emphasizing that the police were unable to determine who started the fight. It is the Attorney General's position that the applicant's prior arrest for aggravated menacing demonstrates a history of conflict between the applicant and the offender, to which the applicant was a contributor.

The Attorney General also asserts that, in the event the panel finds that criminally injurious conduct did occur, the applicant's claim should be denied because the applicant engaged in contributory misconduct by pushing the offend-

er and banging the offender's head on the sidewalk, as indicated in the police report.

Following review of the documents and evidence in the claim file, and with full consideration given to the oral argument and testimony presented at the hearing, this panel makes the following determination.

R.C. 2743.51(L) defines "victim" as:

" * * * a person who suffers personal injury or death as a result of any of the following:

"(1) Criminally injurious conduct;

"(2) The good faith effort of any person to prevent criminally injurious conduct;

"(3) The good faith effort of any person to apprehend a person suspected of engaging in criminally injurious conduct."

R.C. 2743.51(C) defines "criminally injurious conduct," in pertinent part, as:

" * * * any conduct that occurs or is attempted in this state; poses a substantial threat of personal injury or death; and is punishable by fine, imprisonment, or death, or would be so punishable but for the fact that the person engaging in the conduct lacked capacity to commit the crime under the laws of this state."

▆ This panel finds that the applicant's testimony was credible to the extent that it established the offender's initiation of the altercation giving rise to this claim. That portion of the applicant's testimony is corroborated by the statement provided by the applicant's brother. Therefore, we find that criminally injurious conduct did occur because the offender, not the applicant, initiated the confrontation by striking the applicant. Accordingly, the single commissioner's January 31, 1997 decision shall be reversed.

The issue of contributory misconduct must now be decided.

R.C. 2743.60(F) states:

"In determining whether to make an award of reparations pursuant to this section, a single commissioner or panel of commissioners shall consider whether there was contributory misconduct by the victim or the claimant. A single commissioner or a panel of commissioners shall reduce an award of reparations or deny a claim for an award of reparations to the extent it is determined to be reasonable because of the contributory misconduct of the claimant or the victim."

R.C. 2743.51(M) defines "contributory misconduct" as "any conduct of the claimant or of the victim through whom the claimant claims an award of reparations that is unlawful or intentionally tortious and that, without regard to

the conduct's proximity in time or space to the criminally injurious conduct, has a causal relationship to the criminally injurious conduct that is the basis of the claim."

*In re Bieri* (May 10, 1983), Ct. of Cl. No. V80–36295jud, unreported, established that contributory misconduct can be found when an individual voluntarily participates in a fight. *In re Spaulding* (1991), 63 Ohio Misc.2d 39, 619 N.E.2d 1199, overruled *Bieri* only to the extent that such behavior no longer results in automatic denial of an award of reparations. Rather, *Spaulding* provides that denial of an award must be based on a showing of substantial contributory misconduct, while a finding that the contributory misconduct was not substantial warrants reduction of an award.

The Attorney General has the burden of proof with respect to proof of contributory misconduct. *In re Williams* (Mar. 26, 1979), Ct. of Cl. No. V77–0739jud, unreported; and *In re Brown* (Dec. 13, 1979), Ct. of Cl. No. V78–3638jud, unreported.

We find that the Attorney General has established that the applicant and the offender have a history of conflict that includes provoking each other. We base this conclusion on the statements of the applicant and Officer Horton of the Cleveland Police Department. While the evidence presented satisfies this panel that the applicant did not initiate the July 16, 1995 confrontation giving rise to this claim, we conclude that the applicant's prior history of conflict with the offender, including that which resulted in the charge of aggravated menacing against the applicant, provides a basis for finding that the applicant was ready and willing to engage in conflict with the offender. Additionally, we find that the applicant's actions toward the offender, which included knocking the offender to the ground and repeatedly striking the offender's head against the sidewalk, extend beyond the bounds of reasonable self-defense under the circumstances. This conclusion is supported by the fact that the offender in this claim was granted an award of reparations in relation to the same incident now at issue.

For the foregoing reasons, this panel finds that the applicant engaged in contributory misconduct. However, we further find that the applicant's contributory misconduct was not substantial, since he did not initiate confrontation. Therefore, we find that any award to which the applicant may be entitled shall reflect a twenty-five percent reduction pursuant to R.C. 2743.60(F).

The Attorney General's investigation reveals that the applicant incurred allowable expense in the amount of $76.27 for services rendered by Cleveland E.M.S. Following a twenty-five percent reduction pursuant to R.C. 2743.60(F) and recoupment of the $7.50 filing fee pursuant to R.C. 2743.57(B), the applicant shall be granted an award of reparations in the amount of $49.70.

The Attorney General's allowable expense exhibit indicates that the applicant's remaining medical expenses should be submitted to Medicaid; however, the April 29, 1996 investigation report from the Attorney General's Office indicates that the applicant was eligible for Medicaid benefits only for the month of September 1995. It appears that the applicant was covered by Medicare at the time of the criminally injurious conduct. Accordingly, the applicant must submit the medical charges related to the criminally injurious conduct to the appropriate collateral source before reimbursement from this program will be considered. Should the applicant do so and still have unreimbursed allowable expense, the applicant would have the appropriate basis for filing a supplemental reparations application. Similarly, should the applicant obtain verifiable documentation in support of his claim for work loss, the applicant would also have the appropriate basis for filing a supplemental reparations application.

IT IS THEREFORE ORDERED THAT:

1. The January 31, 1997 order of the single commissioner is REVERSED;

2. Judgment is rendered against the state of Ohio and the Office of Budget and Management as its agency for payment of the award in the amount of $49.70;

3. The Clerk shall certify the judgment, in the amount of $49.70 to the Director of the Office of Budget and Management for payment to the applicant pursuant to R.C. 2743.191;

4. This award is expressly conditioned upon the subrogation provisions of R.C. 2743.72(A) through (E), which provide, among other things, that the applicant must repay an award to the state if benefits or advantages are received from any person or entity, including a collateral source, or if the Attorney General discovers and proves that the applicant was not actually eligible for an award of reparations, or the award should not have been made under the standards and criteria set forth in the Victims of Crime Act;

5. This order is entered without prejudice to the applicant's right to file a supplemental reparations application pursuant to R.C. 2743.60(D) and 2743.68 if the applicant incurs economic loss not considered in this determination and not reimbursed from other persons, including collateral sources;

6. Any future awards granted in connection with this claim shall reflect a twenty-five percent reduction pursuant to R.C. 2743.60(F);

7. Costs assumed by the reparations fund.

*Judgment accordingly.*

KARL H. SCHNEIDER, JAMES H. HEWITT III and PHILLIP E. PARISI, Commissioners, concur.