No. 93,701

GREG and LINDA FISHER, *Appellants*, v. KANSAS CRIME VICTIMS COMPENSATION BOARD, *Appellee*.

(124 P.3d 74)

Opinion filed December 9, 2005.

*Richard F. Hayse*, of Morris, Laing, Evans, Brock & Kennedy, Chtd., argued the cause, and *Luke A. Sobba*, of the same firm, was with him on the briefs for appellants.

*Steve Phillips*, assistant attorney general, argued the cause, and *Harry Kennedy*, assistant attorney general, and *Phill Kline*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Greg and Linda Fisher filed a claim for the death of their son Jeremy before the Kansas Crime Victims Compensation Board. Twenty-five percent of the allowed compensation was withheld by the Board based upon "the contributory misconduct" of Jeremy. See K.S.A. 2004 Supp. 74-7305(c)(2). The district court affirmed the Board's determination. The question, one of first impression in this state, is whether Jeremy's conduct on the morning of the accident contributed to his death under the provisions of K.S.A. 2004 Supp. 74-7305(c)(2) and K.A.R. 20-2-8. We hold that his conduct did not contribute to his death, reverse the district court, and remand with directions.

Fifteen-year-old Jeremy Fisher collided with an automobile in his own lane of traffic at approximately 8 a.m. on December 7, 2002. Donny Taylor was driving the other automobile and also died as a result of the collision. Although there were no eyewitnesses, officers were able to determine that the vehicle driven by Taylor in the northbound lane of U.S. Highway 281 crossed the center line into the southbound lane and struck Jeremy's vehicle head-on. Blood samples taken at the scene revealed that Taylor had a blood alcohol concentration (BAC) of .15 grams per 100 milliliters of blood (which exceeds the legal limit) and Jeremy had a BAC of .05 grams per 100 milliliters of blood (which exceeds the .02 legal limit for a person under the age of 21). Further investigation revealed that Taylor had been drinking heavily the night before and that Jeremy had been out with friends the previous night until 12:30 a.m.

On September 25, 2003, Jeremy's parents, Greg and Linda Fisher, filed an application for crime victims compensation in the amount of $5,000 for funeral expenses. After reviewing the claim at its regular meeting on January 16, 2004, the Board initially denied the claim, finding that the victim's action leading up to the incident was a factor that contributed to his injuries in its January 21, 2004, summary proceeding order: "The claimant or victim was involved in 'contributory misconduct' with regard to the incident which gave rise to the claim, as provided in K.S.A. 2001 Supp. 74-7305(c)(2), and K.A.R. 20-2-8."

The Fishers appealed this ruling, and a hearing was set for March 12, 2004, at the Board's offices. At the hearing, the Fishers were represented by counsel and provided testimony, exhibits, and statements. No transcript of this hearing is in the record on appeal even though K.A.R. 20-3-2(e) provides that "a record of the proceedings may be transcribed." Counsel submitted written argument contending that Jeremy's blood alcohol level did not constitute "contributory misconduct." As "contributory misconduct" is not defined, the Fishers urged the Board to apply the principles of "comparative fault," including proximate cause, in its interpretation. They argued that no evidence was presented that Jeremy's blood alcohol level caused or contributed to this accident or to his death.

Part of the agency record before the Board included the Crime Victims Compensation Board Law Enforcement Verification Form prepared by the responding officer, David Golden. It provides in relevant part:

"5a) Was the victim assisting, attempting or committing a criminal act at the time of the crime? No _____ Yes _X_ If yes, please explain. Victim's blood alcohol level at the time of the crash was .05. The legal limit for a person his age is .02.

"5b) If the victim was committing a criminal act, was the victimization a direct result of the criminal act being committed? No _____ Yes _____ If yes, please explain. I cannot determine that."

On March 15, 2004, the Board issued a summary proceeding order which provided that the Board approved the application for compensation. The order further provided: "Your claim was di-

minished by 25% for contributory misconduct. The Board determined that the victim's action leading up to the incident was a contributing factor in the incident as provided in K.S.A. 2001 Supp. 74-7305(c)(2) and K.A.R. 20-2-8."

In its March 17, 2004, final order, the Board first explained its earlier ruling:

"3. The Law Enforcement Report indicated that the victim's Blood Alcohol Level was .05 which was over the legal .02 limit for the victim's age. Therefore, Jeremy was unlawfully operating a motor vehicle upon the highway. For this reason, the Board diminished the claim 100% due to contributory misconduct by the victim."

However, after the hearing on appeal, the Board partially approved the claim but reduced it by 25% ($3,750) "due to the underage alcohol level of the victim."

The Fishers filed a petition for judicial review arguing that the Board misapplied K.S.A. 2004 Supp. 74-7305(c)(2) and K.A.R. 20-2-8 in finding Jeremy's actions constituted contributory misconduct. In support, the Fishers noted that there had been no evidence that Jeremy's conduct (specifically, having a BAC of .05) was a contributing factor in his death.

In its November 9, 2004, memorandum decision and order, the district court affirmed the Board's final order. The district court found substantial evidence supported a finding that Jeremy was driving in violation of the law at the time of the accident by having a BAC of .05 the morning after having been out with his friends until 12:30 a.m. and that the Board took this into account as contributory misconduct. The court rejected the Fishers' argument that the Board misapplied and erroneously interpreted the law because their argument did not take into account the great judicial deference given to the agency's interpretation of the statute:

"It cannot be said that there is no rational basis for the [Crime Victims Compensation Board] CVCB's interpretation of the statute. The evidence in the record reveals that Mr. Fisher was driving in violation of the law. Furthermore, abuse of alcohol or drugs is specifically listed as being a factor that may signify contributory misconduct. Given the deference the CVCB is entitled to, and the fact that there is no case-law support of the Petitioner's position of equating contributory misconduct to contributory negligence, this Court cannot find that the interpretation of the law was erroneous or that the law was misapplied.

"Petitioners also contend that the Final Order is unreasonable, arbitrary, or capricious. However, this contention is belied by the record. The Final Order is supported by substantial evidence, and there is a rational basis for the CVCB's interpretation of the statute. Again, there is evidence that Mr. Fisher was engaged in illegal conduct prior to the accident, and there is no authority for the interpreting the statute as requiring a proximate cause type finding. Simply because the CVCB did not find entirely in the Petitioner's favor, instead interpreting the statue in a different way, does not make the decision unreasonable, arbitrary or capricious."

The Fishers appealed from the memorandum decision, and this court has jurisdiction by transfer on its own motion pursuant to K.S.A. 20-3018(c).

## Standard of Review

The facts are not in dispute. The question presented is one of law involving the interpretation of "contributory misconduct" in K.S.A. 2004 Supp. 74-7305(c)(2) and K.A.R. 20-2-8. Our standard of review is unlimited. *Babe Houser Motor Co. v. Tetreault,* 270 Kan. 502, 506, 14 P.3d 1149 (2000). Both the Board and the district court acknowledged this standard but relied heavily upon the judicial deference to be given to the administrative agency charged with the responsibility of enforcing the statute to be interpreted. Ultimately, however, it is the appellate court applying a de novo standard of review that interprets the statute in question:

"The interpretation of a statute by an administrative agency charged with the responsibility of enforcing a statute is entitled to judicial deference and is called the doctrine of operative construction. Deference to an agency's interpretation is particularly appropriate when the agency is one of special competence and experience. Although an appellate court gives deference to the agency's interpretation of a statute, the final construction of a statute lies with the appellate court, and the agency's interpretation, while persuasive, is not binding on the court. Interpretation of a statute is a question of law over which an appellate court's review is unlimited. [Citation omitted.]" *In re Appeal of United Teleservices, Inc.,* 267 Kan. 570, 572, 983 P.2d 250 (1999).

Moreover, the parents of Jeremy after exhausting their administrative remedies before the Board appealed to the district court under the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.,* and then to this court. The standards applied in an appeal from the district court provide:

"When an administrative agency action is appealed to the district court pursuant to the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.*, and then appealed from the district court to this court, we review the agency's decision as though the appeal had been made directly to this court, and we are subject to the same limitations of review as the district court." *In re Doe,* 277 Kan. 795, Syl. ¶ 1, 90 P.3d 940 (2004).

The party asserting an agency's action is invalid bears the burden of proving the invalidity. K.S.A. 77-621(a)(1). Relevant to this case, K.S.A. 77-621(c) provides:

"(c) The court shall grant relief only if it determines any one or more of the following:

. . . .

(4) the agency has erroneously interpreted or applied the law;

. . . .

(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

(8) the agency action is otherwise unreasonable, arbitrary or capricious."

## Interpretation of "Contributory Misconduct" under K.S.A. 2004 Supp. 74-7305(c)(2) and K.A.R. 20-2-8(a)(3)

The Kansas Crime Victims Compensation Board was established by the legislature in 1978 "to take care of those people who had no where else to turn," Minutes, House Comm. on Federal and State Affairs, February 4, 1977, by "establish[ing] a state-financed program of reparations to crime victims or their dependents who suffer personal injury or death as a result of criminal acts." Minutes, Senate Comm. on Federal and State Affairs, March 15, 1978. The Board awards compensation to claimants for economic loss arising from criminal conduct if satisfied by a preponderance of the evidence that the requirements for compensation have been met. K.S.A. 2004 Supp. 74-7302(a).

However, K.S.A. 2004 Supp. 74-7305(c)(2) provides: "(c) Compensation otherwise payable to a claimant shall be diminished: . . . (2) to the extent, if any, that the board deems reasonable because of the contributory misconduct of the claimant or of a victim through whom the claimant claims." K.S.A. 74-7304(c) grants the Board power to adopt rules and regulations to carry out

the provisions of the Act. K.A.R. 20-2-8, which addresses contributory misconduct, provides in relevant part:

"(a) An award of compensation may be reduced if the board finds that the claimant or the victim through whom the claimant makes the claim has contributed to the injury for which the claim is made. The following acts or behavior may signify contributory misconduct:
(1) Consent, provocation or incitement, including the use of fighting words or obscene gestures;
(2) willing presence in a vehicle operated by a person who is known to be under the influence of alcohol or an illegal controlled substance;
(3) abuse of alcohol or an illegal substance;
(4) failure to retreat or withdraw from a threatening situation when an option to do so is readily available; or
(5) failure to act as a prudent person."

The Fishers argue the Board's reduction of their compensation was based on a misapplication of the term "contributory misconduct" found in K.S.A. 2004 Supp. 74-7305(c)(2) and K.A.R. 20-2-8. The Fishers argue that because no Kansas cases have interpreted the term "contributory misconduct," case law construing the doctrine of comparative fault adopted by Kansas in 1974 provides the most useful basis for determining whether Jeremy's wrongful act was a contributing factor in the accident.

Under the comparative fault theory, "[a] party is at fault when he or she is negligent and that negligence caused or contributed to the event which brought about the injury or damages for which claim is made." See *Reynolds v. Kansas Dept. of Transportation,* 273 Kan. 261, 269, 43 P.3d 799 (2002); PIK Civ. 3d 105.01. The Fishers cite *Miles v. West,* 224 Kan. 284, 580 P.2d 876 (1978), where this court found that the failure to give a proximate cause instruction on the issue of intoxication in a car accident comparative negligence case was not reversible where the instructions in their entirety made "it clear that the intoxication of defendant had to cause or contribute to the accident before the jury could assess liability on that basis." 224 Kan. at 289.

The Fishers further urge the court to apply a proximate cause analysis in interpreting "contributory misconduct." They cite authority that a person cannot be found negligent unless his or her conduct was the proximate cause of the injury in question, and the

proximate cause of an injury is a cause which " 'in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of wrongful act.' " *Burns v. Benedict*, 827 F. Supp. 1545, 1549 (D. Kan. 1993). The Fishers argue that being hit head-on by a drunk driver who crossed the center line of the highway was not the " 'natural and probable consequence' of Jeremy's actions." However, the Fishers fail to recognize that this court has more recently recognized that "[w]ith the adoption of comparative fault, Kansas has moved beyond the concept of proximate cause in negligence," and the nature of misconduct in such cases is to be expressed on the basis of degrees of comparative fault or causation. *Reynolds*, 273 Kan. at 269.

The Board responds that the Crime Victims Compensation Board was established by the Kansas Legislature in 1978 pursuant to K.S.A. 74-7301. As the doctrine of comparative fault was established in Kansas in 1974, the legislature had the opportunity to equate contributory misconduct with the term or principles of comparative fault but did not do so. As such, it contends no support exists for the Fishers' contention that contributory misconduct is akin to the doctrine of comparative fault and more specifically proximate cause. The Board argues it had a rational basis for its interpretation of "contributory misconduct," *i.e.*, "to prevent unlawful conduct or to recognize the same and promote lawful conduct" by reducing "awards, or not make awards at all if there is evidence of unlawful conduct."

Although no Kansas case has specifically addressed this issue, a similar situation arose in *Jones v. Kansas State University*, 279 Kan. 128, 106 P.3d 10 (2005), where the Kansas State Civil Service Board upheld the termination of a police officer after finding that he engaged in "gross misconduct" and "conduct grossly unbecoming a state officer or employee," and the Court of Appeals reversed on appeal. On petition for review, this court determined that the Court of Appeals erroneously defined "gross misconduct" and "conduct grossly unbecoming a state officer or employee" under the Civil Service Act by applying the definition of gross misconduct

found in employment security law. We declined to adopt a single definition for the terms, reasoning that although this definition might be one factor to consider, the terms are best defined by their dictionary meanings, within the context of the civil service statute, by reviewing other cases interpreting similar terms, and by examining the totality of circumstances. We concluded that an appointing authority must decide on a case-by-case basis whether the particular misconduct was "gross." 279 Kan. 128, Syl. ¶ 10.

As no Kansas case discusses or interprets "contributory misconduct," and the legislative history provides no further definition, we examine all of the resources set forth in *Jones* in resolving this issue. No question exists that Jeremy engaged in misconduct by driving with a BAC of .05 in this case; rather, the critical issue is whether the misconduct was "contributory." Not only must the misconduct be "contributory," but it also must have "contributed to the injury for which the claim is made." K.A.R. 20-2-8.

The vast majority of cases discussing "contributory misconduct" arising in a crime victims reparations context are from North Carolina and Ohio. Both states have interpreted "contributory misconduct" as including a proximate cause or causal relationship element. The North Carolina Court of Appeals interprets "contributory misconduct" under the North Carolina Crime Victims Compensation Act as follows: " 'Misconduct' is behavior that is 'unlawful or . . . breach[es] the standard of conduct acceptable to a reasonable person.' [Citation omitted.] Further, 'in order for [a] claimant's misconduct to be contributory [under the Act] it must combine with criminal action on the part of another to become a "real, efficient and proximate cause of the injury." ' " *McCrimmon v. Crime Victims Compensation Comm.*, 121 N.C. App. 144, 147, 465 S.E.2d 28 (1995).

In *McCrimmon*, the court found the claimant's theft of money from a convenience store customer was the proximate cause of a store owner shooting the claimant in the back as he attempted to flee and, therefore, was "contributory misconduct" within the meaning of the statute permitting denial of the claim. 121 N.C. App. at 147-49. In contrast, in *Evans v. N.C. Dept. of Crime Control*, 101 N.C. App. 108, 118, 398 S.E.2d 880 (1990), the North

Carolina Court of Appeals found substantial evidence did not support the commission's finding that the victim engaged in "contributory misconduct" because the victim's injuries were not reasonably foreseeable when he left a bar with two women to go dancing at another bar and was stabbed by one of the women.

Ohio defines "contributory misconduct" by statute as

"any conduct of the claimant or of the victim through whom the claimant claims an award of reparations that is unlawful or intentionally tortious and that, without regard to the conduct's proximity in time or space to the criminally injurious conduct, has a causal relationship to the criminally injurious conduct that is the basis of the claim." Ohio Rev. Code Ann. § 2743.51(M) (West 1994).

In *In re McNeil*, 6 Ohio Misc. 2d 12, 453 N.E.2d 1309 (1983), the Ohio Court of Claims upheld the denial of crime victim reparations where the victim solicited a prostitute to his home and was subsequently stabbed and killed by the prostitute because the victim was involved in "contributory misconduct." Of note in this case, one explanation of contributory misconduct was as follows:

" 'A victim does not have to be innocent of all misconduct, but only that misconduct which can reasonably be said to have caused or contributed to the injury. Contributory misconduct connotes a finding that the misconduct is "a" or "the" proximate cause, but for which the injury would not have occurred.' " 6 Ohio Misc. 2d at 14 (quoting *In re Williams*, Court of Claims No. 79-004, unpublished opinion filed March 21, 1979).

In *In re Sotak*, 61 Ohio Misc. 2d 808, 585 N.E.2d 580 (1990), the claimant was injured in an automobile accident where he was a passenger in a car in which the driver was driving under the influence. The attorney general recommended denying reparations because the claimant's failure to wear a seat belt in violation of Ohio law constituted contributory misconduct. The Ohio Court of Claims disagreed on appeal, reasoning:

"Although Sotak's failure to wear a seat belt may have been unlawful and may bear some causal relationship to the fact that she sustained personal injury, her conduct did not bear any causal relationship to the offender's decision to drive while under the influence of alcohol. The essence of contributory misconduct is the causal connection between the injured party's *conduct* and the offender's conduct rather than the *injuries arising from* that conduct. Put simply, the offender's decision to drive drunk was not motivated or instigated by the applicant's

decision not to wear a seat belt. Therefore, the applicant's claim will be granted." 61 Ohio Misc. 2d at 809-10.

See also *In re Damiano*, 91 Ohio Misc. 2d 162, 698 N.E.2d 141 (Ct. Cl. 1997) (tavern patron who voluntary engaged in physical altercation engaged in contributory misconduct warranting a reduction in reparations); *In re Svoboda*, 91 Ohio Misc. 2d 166, 698 N.E.2d 144 (1997) (applicant for reparations who did not initiate confrontation engaged in "contributory misconduct" by throwing offender to ground and repeatedly striking offender's head against sidewalk justifying reduction of award). But see *In re Howard*, 127 Ohio Misc. 2d 61, 805 N.E.2d 616 (2004) (statutory presumption that felony conduct by crime victim contributed to the criminally injurious conduct, thus requiring a complete denial of the claim for reparations, is consistent with definition of contributory misconduct in terms of causal relationship to the criminally injurious conduct that is the basis of the claim). In *Howard*, the court upheld the denial of reparations where a gunshot victim's toxicology report showed evidence of a felonious drug history but did not establish " 'how the victim's allegedly having ingested cocaine caused the criminally injurious conduct.' " 127 Ohio Misc. 2d at 64.

Although the Michigan Crime Victims Reparations Act does not use the term "contributory misconduct," its interpretation of "contributed to the infliction of his injury" provides further guidance in this case, as K.A.R. 20-2-8 provides the claim may be reduced if the claimant "has contributed to the injury for which the claim is made." In *McMillan v. Crime Victims Compensation Bd.*, 155 Mich. App. 358, 399 N.W.2d 515 (1986), the claimant was shot in the leg, while in an unlicenced bar (a misdemeanor), after he asked a woman to dance and commented on the obscene language her husband used in response to his request. The Michigan Court of Appeals considered whether the claimant's actions provided a basis for the board's denial of his claim because he "contributed to the infliction of his injury."

Of note to this case, the court specifically rejected the Board's interpretation of this language as holding

"that anytime a claimant violates any criminal statute and the violation of the criminal statute is in any way a cause in fact of the claimant's injury, the claimant

has 'contributed to the infliction of his injury.' Such an interpretation would lead, in some situations, to results which would appear contrary to the Legislature's intent to aid certain crime victims who are not blameworthy in causing their injuries." 155 Mich. App. at 364.

The court decided that the determination of whether a victim contributed to the infliction of his or her injury involves an assessment of the particular factual situation similar to that which is used in determining whether a defendant's negligent acts were a proximate cause of a plaintiff's injuries. The court found that if the risk that the victim's injury would result from a particular criminal statute violation is foreseeable and not too remote, then the board should be allowed to deny or reduce his or her award under the statute. However, if the risk of injury due to the violation is very remote and unforeseeable, the board cannot deny or reduce his or her award under the statute. 155 Mich. App. at 365-66.

Under the facts of *McMillan*, the court concluded that the claimant's criminal violation merely involved his knowing presence in an unlicenced bar and the risk of being shot while merely present in an unlicenced bar was too remote and unforeseeable to hold him blameworthy for his injuries. The court found that the obvious, proximate cause of the claimant's injury was being shot by the husband, reasoning:

"While it is true that claimant would not have been injured 'but for' having gone to the 'blind pig,' it can be said his presence there was no more the cause of his injury than would his presence on a public street have been the cause if he had been shot by [the husband] on a public street. There is no apparent basis for saying that presence in a blind pig makes one more likely to be shot than presence on a public street at 2:30 a.m. in the morning. Thus, these analogies would seem to indicate that claimant's mere presence in the blind pig did not contribute to his injury." 155 Mich. App. at 366.

In making its decision, the Michigan Court of Appeals distinguished the main case relied upon by the board in reaching its decision, *In re McNeil*, 6 Ohio Misc. 2d 12, 453 N.E.2d 1309 (1983), because the victim in *McNeil* was actively engaged in prostitution activity and "the Ohio provision differs from the Michigan statute in that it does not require the victim to 'contribute to the

infliction of his injury,' but merely requires him to engage in 'contributory misconduct.' " 155 Mich. App. at 367.

In this case, the Board did not specifically define "contributory misconduct" but found that Jeremy engaged in contributory misconduct by "unlawfully operating a motor vehicle upon the highway" with a BAC over the legal limit for a person under the age of 21. The Board's conclusion can be interpreted in two ways. First, this conclusion suggests that the simple fact that Jeremy violated the driving under the influence statute for a person under the age of 21, without any further explanation of how it contributed to the accident, was per se contributory misconduct warranting a reduction of compensation. However, this interpretation focuses only on the term "misconduct" and completely ignores the term "contributory." This interpretation runs contrary to the presumption that the legislature does not intend to enact useless or meaningless legislation and the obligation to interpret a statute in such a way that part of it does not become surplusage. See *State v. Van Hoet*, 277 Kan. 815, 826-27, 89 P.3d 606 (2004).

Second, as no evidence was presented that Jeremy was speeding or driving erratically, the Board seems to have held that "but for" Jeremy's unlawful presence on the road he would not have been killed. This is precisely the argument rejected by the Michigan Court of Appeals in *McMillan* in its discussion of the effect of the claimant's stabbing while he was unlawfully present in the bar as opposed to simply being stabbed in a lawful place. As the Board has abandoned that portion of its brief citing reports and studies concerning the effect of BAC on driving ability, no evidence was presented in this case that Jeremy's blood alcohol level made it more likely that he would have been hit by a drunk driver.

In the same vein, the Fishers' argument that the legislature did not believe that a minor's ability to drive safely was impaired when driving with a BAC of .02 to .08 because it only assesses administrative rather than criminal penalties is not persuasive. See K.S.A. 8-1567a. The Fishers reason that under K.S.A. 2004 Supp. 8-1567, being under the influence of alcohol "means that the operator's physical or mental function is so impaired by the consumption of

alcohol that he or she is incapable of safely driving a vehicle." *State v. Blair*, 26 Kan. App. 2d 7, 8, 974 P.2d 121 (1999).

The problem with this argument is that simply because K.S.A. 8-1567a does not impose criminal penalties does not suggest that no impairment exists which might have contributed to the accident in this case. Rather, the crux of the issue in this case is whether any evidence was presented that Jeremy's BAC of .05 contributed to the accident which took his life.

Thus, under either interpretation of the Board's application of the term "contributory misconduct," we find that "[s]uch an interpretation would lead, in some situations to results that would appear contrary to the Legislature's intent to aid certain crime victims who are not blameworthy in causing their injuries" and would erroneously render a portion of the statute superfluous. *McMillan*, 155 Mich. App. at 364.

In its brief, the Board explains that its interpretation of "contributory misconduct" was to reduce or deny awards if there is evidence of unlawful conduct. Although this rationale makes sense in theory, its broad application without reference to whether the unlawful misconduct is "contributory" runs contrary to the regulation adopted by the Board itself: "An award of compensation may be reduced if the board finds that the claimant or the victim through whom the claimant makes the claim *has contributed to the injury for which the claim is made*." (Emphasis added.) K.A.R. 20-2-8(a). The regulation clearly provides that the misconduct, even if unlawful, must contribute to the injury.

Further, "abuse of alcohol or an illegal substance" is specifically listed as an act which *may*, not shall, signify contributory misconduct. This act, along with the others listed, *i.e.*, consent, provocation, or incitement, including the use of fighting words or obscene gestures; willing presence in a vehicle operated by someone known to be under the influence; failure to retreat or withdraw from a situation when an option to do so is readily available; and failure to act as a prudent person, are broad in nature and may encompass many different factual situations, which may or may not contribute to the injury. While the Board certainly has the discretion to determine that a minor's abuse of alcohol contributed to his or her

injury if the evidence would support such a conclusion, the problem in this case is that no evidence was presented to support the conclusion that Jeremy's misconduct "contributed to the injury for which the claim [was] made." K.A.R. 20-2-8.

The Board is correct that it was in no way bound to apply either a "comparative fault" or "proximate cause" analysis in awarding crime victims compensation, and nothing in the plain language of the statute or the legislative history suggests that these tort analyses were expected or intended to be utilized by the Board in awarding crime victims compensation. However, it is important to note that the regulation provides that the "contributory misconduct" must have "contributed to the injury." This is essentially half of the comparative fault jury instruction. See PIK Civ. 3d 105.01, Comparative Fault Theory and Effect ("A party is at fault when he or she is negligent and that negligence caused or contributed to the event which brought about the injury or damages for which claim is made."). Regardless, the Board needed to apply the statute and regulation so as to give some meaning to the term "contributory," and these definitions provide some guidance in this regard.

When construing a statute, the court must give words in common usage their natural and ordinary meaning. *Schmidtlien Electric, Inc. v. Greathouse*, 278 Kan. 810, 822, 104 P.3d 378 (2005) (quoting *Sawyer v. Oldham's Farm Sausage Co.*, 246 Kan. 327, 331, 787 P.2d 697 [1990]). Statutes providing for an award of compensation to crime victims are remedial in nature. "A legislative act remedial in nature is to be liberally construed to effectuate the purpose for which it was enacted." *Smith v. Marshall*, 225 Kan. 70, Syl ¶ 1, 587 P.2d 320 (1978).

Black's Law Dictionary 353 (8th ed. 2004) defines "contributory" as "[t]ending to bring about a result" or "[a] contributing factor." Webster's defines "contributory" as "of, relating to, or forming a contribution," and "contribute" is defined as "to give or supply in common with others" or "to play a significant part in bringing about an end or result." Webster's New Collegiate Dictionary 245 (1980).

Application of the dictionary definitions, the above case law, and the legislative history, and an examination of the statute and reg-

ulation, all support our conclusion that the Board erroneously interpreted and applied the term "contributory misconduct" in this case. In all of the cases discussed above, "contributory misconduct" or "contributed to the infliction of his injury" was only found in cases where the claimant's misconduct caused, contributed, or was the proximate cause of the injury. Although the Board is granted great deference in the interpretation of its statutes and regulations, we conclude that the Board's application of the term "contributory misconduct" to the facts of this case disregards the meaning of "contributory" and the regulation's requirement that the misconduct "contributed to the injury for which the claim is made."

Although *Jones* counsels that this court need not adopt a definition of the term "contributory misconduct," the statute and the regulation make it clear that "contributory misconduct" must have "contributed to the injury." See K.S.A. 2004 Supp. 74-7305(c)(2); K.A.R. 20-2-8. At the very least, when applying the common meaning to the term, Jeremy's misconduct needed to play some part in bringing about the end result of his fatal injuries. Under the facts of this case, the Board misapplied K.S.A. 2004 Supp. 74-7305(c)(2) and K.A.R. 20-2-8 by concluding that Jeremy's conduct constituted "contributory misconduct" warranting a reduction of compensation.

At oral argument, counsel for the Fishers made a request for attorney fees and expenses under K.S.A. 74-7311, which provides:

"As part of any order, the board shall determine and award a reasonable attorney's fee, commensurate with services rendered, to be paid by the state to the attorney representing the claimant. Additional attorneys' fees may be awarded by a court in the event of review, and attorneys' fees may be denied on a finding that the claim or appeal is frivolous. Awards of attorneys' fees shall be in addition to awards of compensation and may be made whether or not compensation is awarded. It shall be unlawful for an attorney to contract for or receive any larger sum than the amount allowed pursuant to this section."

Review of the record reveals that the Fishers' sole request for attorney fees and expenses prior to oral argument was in their petition for judicial review before the district court. The issue of attorney fees was not raised before the Board. We recognize that K.S.A. 74-7311 makes a distinction that the Board shall order at-

torney fees for services rendered during proceedings before the Board while the courts may order attorney fees for services rendered on appeal. As such, the determination and award of attorney fees must be made at each step of the proceedings. *Cf. Evans v. Provident Life & Accident Ins. Co.*, 249 Kan. 248, 265, 815 P.2d 550 (1991) (Court of Appeals erred in remanding case to district court for determination of appellate attorney fees as "[m]otions for attorney fees incurred before the Court of Appeals should be determined by the Court of Appeals.").

In this case, although K.S.A. 74-7311 would permit this court to award such fees and expenses for services rendered on appeal to this court, we note that counsel has failed to comply with Kansas Supreme Court Rule 7.07(b) (2004 Kan. Ct. R. Annot. 53) by filing a motion with the clerk of the appellate courts within 15 days of oral argument which complies with Supreme Court Rule 5.01 (2004 Kan. Ct. R. Annot. 30) and contains an affidavit specifying the nature and extent of the services rendered, the time expended on the appeal, and the factors considered in determining the reasonableness of the fee. The failure to comply with these rules prevents this court from awarding attorney fees and expenses authorized by statute. See *Smith v. McKune*, 31 Kan. App. 2d 984, 963, 78 P.3d 1174, *rev. denied* 277 Kan. 925 (2003) (citing *Conner v. Janes*, 267 Kan. 427, 430, 981 P.2d 1169 [1999]).

However, as a request was made for attorney fees and expenses at the district court level, we remand the case to the district court for a determination of whether attorney fees and expenses were appropriate for services rendered on appeal to the district court in light of our reversal of the district court's decision affirming the Board's reduction of benefits based upon contributory misconduct. Additionally, we note that the parties are not precluded from revisiting the issue of attorney fees before the Board in light of this opinion, particularly as K.S.A. 74-7311 mandates that the Board *shall* award attorney fees for the services rendered by appellant's counsel before the Board.

We reverse the decision of the district court affirming the Crime Victims Compensation Board reduction of compensation based

upon contributory misconduct and remand to the district court with instructions to make a determination regarding attorney fees and to award the full $5,000 award.

LARSON, S.J., assigned.