NOT DESIGNATED FOR PUBLICATION

No. 124,683

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ZACHARY L. ZENDLE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; STACEY DONOVAN, judge. Opinion filed January 27, 2023. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Cynthia Huebner*, legal intern, *Jon Simpson*, assistant district attorney, *Suzanne Valdez*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., BRUNS, J., and PATRICK D. MCANANY, S.J.

PER CURIAM: A jury sitting in Douglas County District Court convicted Defendant Zachary L. Zendle of misdemeanor stalking for following a young woman with whom he had never spoken to a restaurant and then to her residence on Valentine's Day and sending her a video showing him standing there with a bouquet of roses. On appeal, Zendle has challenged the sufficiency of the evidence—an argument that essentially rests on two distorted readings of the statutory language in K.S.A. 2021 Supp. 21-5427(a)(1) defining the crime. Zendle's legal position is untenable. We, therefore, affirm the guilty verdict and the resulting sentence the district court imposed.

1

The facts may be quickly outlined. Zendle went to high school with G.S., the victim, and both enrolled at the University of Kansas. The undisputed trial evidence established Zendle and G.S. had never spoken and had no in-person or virtual relationship of any kind. Zendle was in the process of withdrawing or had withdrawn from the University when he contacted G.S. on February 14, 2021.

Zendle sent a video message to G.S. that evening, and she opened it on her smartphone. The video depicted Zendle standing in front of her dormitory with a bouquet of roses. In the video, Zendle says he drove eight hours from Colorado and went to a restaurant in Lawrence looking for G.S. after she posted she was there. Zendle vows to stand in front of the dorm for 10 minutes or until he dies, and all she has to do is come down and get the flowers. G.S. stopped the video and blocked Zendle. The next day Zendle contacted G.S.'s roommate and asked about G.S.'s class schedule, so he could intercept her. After discussing the situation with her roommate, her boyfriend, her mother, and dormitory staff, G.S. contacted the University of Kansas Police Department. An officer questioned Zendle.

About a week later, the Douglas County District Attorney's office charged Zendle with one count of reckless stalking of G.S., a class A person misdemeanor violation of K.S.A. 2021 Supp. 21-5427(a)(1). The jury heard evidence in the case in August 2021 and found Zendle guilty as charged. The district court imposed a jail sentence of nine months and placed Zendle on probation. Zendle has appealed.

On appeal, Zendle disputes the sufficiency of the evidence to support the jury's guilty verdict. In reviewing a sufficiency challenge, we construe the evidence in a light most favorable to the party prevailing in the district court, here the State, and in support of the jury's verdict. An appellate court will neither reweigh the evidence generally nor make credibility determinations specifically. *State v. Jenkins*, 308 Kan. 545, Syl. ¶ 1, 422 P.3d 72 (2018); *State v. Butler*, 307 Kan. 831, 844-45, 416 P.3d 116 (2018); *State v.*

2

*Pham*, 281 Kan. 1227, 1252, 136 P.3d 919 (2006). The issue for review is simply whether rational jurors could have found the defendant guilty beyond a reasonable doubt. *Butler*, 307 Kan. at 844-45; *State v. McBroom*, 299 Kan. 731, 754, 325 P.3d 1174 (2014).

Essentially, Zendle contends what the State proved during the trial didn't match what K.S.A. 2021 Supp. 21-5427(a)(1) requires to convict. We, therefore, turn to the statutory description of reckless stalking. An individual violates K.S.A. 2021 Supp. 21-5427(a)(1) by "[r]ecklessly engaging in a course of conduct targeted at a specific person which would cause a reasonable person in the circumstances of the targeted person to fear for such person's safety, or the safety of a member of such person's immediate family and the targeted person is actually placed in such fear." The statute, in turn, defines "course of conduct" as "two or more acts over a period of time, however short, which evidence a continuity of purpose" and includes by way of example "following, approaching[,] or confronting the targeted person." K.S.A. 2021 Supp. 21-5427(f)(1)(B). The jury was instructed to consider that way of committing reckless stalking.

On appeal, Zendle argues that the phrase "following, approaching[,] or confronting" requires that the defendant actually make contact with the victim in the sense of being physically close or proximate to the victim to violate the statute. We find the argument unpersuasive, especially when we attribute meaning to each constituent word of that subsection.

Our overarching objective in construing statutory language is to give effect to the legislative intent and purpose animating the statute. *State v. Keys*, 315 Kan. 690, 698, 510 P.3d 706 (2022); *State v. Gracey*, 288 Kan. 252, 257, 200 P.3d 1275 (2009). In doing so, we typically should accord words in a statute their common or everyday meanings unless special definitions are included or otherwise plainly intended. *Keys*, 315 Kan. at 698; *State v. Baumgarner*, 59 Kan. App. 2d 330, 335, 481 P.3d 170 (2021) ("Absent some specialized statutory definition, the words of a statute typically should be given their

ordinary meaning."). Dictionaries, of course, readily furnish those usual meanings. *Midwest Crane & Rigging, LLC v. Kansas Corporation Comm'n*, 306 Kan. 845, 851, 397 P.3d 1205 (2017). Likewise, each word of a statute should be given a distinct meaning and purpose if reasonably possible. See *Fisher v. Kansas Crime Victims Comp. Bd.*, 280 Kan. 601, 613, 124 P.3d 74 (2005); *State v. Van Hoet*, 277 Kan. 815, 826-27, 89 P.3d 606 (2004) ("The court should avoid interpreting a statute in such a way that part of it becomes surplusage.").

If the statute criminalized stalking simply as two or more instances of "approaching or confronting" the victim, Zendle's argument would have some force to it. Those words convey a physical proximity between the stalker and the stalked. See Webster's New World College Dictionary 70 (5th ed. 2016) ("approach" defined as "to come near or nearer to"); Webster's New World College Dictionary 313 ("confront" defined as "to face; stand or meet face to face"). But the statute is not so limited. The statute covers a broader range of conduct by including "following"—"follow" is commonly defined as "to come or go after," Webster's New World College Dictionary 562; and as "to go, proceed, or come after," Merriam-Webster's Collegiate Dictionary 486 (11th ed. 2020). To follow someone, then, does not require actual contact with that person or even getting close to him or her. Accepting Zendle's reading of the statute would impermissibly render "following" vestigial and substantially curtail the intended legislative scope of the protections to be afforded against stalking.

Our rejection of Zendle's argument conforms to appellate cases construing comparable language in the predecessor statute to K.S.A. 21-5427. *State v. Whitesell*, 270 Kan. 259, 275, 13 P.3d 887 (2000) (in construing K.S.A. 21-3438, court finds "following" does not require "physical contact"); *State v. Zhu*, 21 Kan. App. 2d 914, 916, 918, 909 P.2d 679 (1996) (relying on dictionary definition, court finds sufficient evidence of "following" when Zhu went to victim's house and place of work, although victim did not see him there and was only later informed of his presence).

4

The evidence established that when G.S. posted on social media she was dining at a particular restaurant, Zendle went there in hopes of finding her. In a word, Zendle followed her there. So that was an act for purposes of proving a course of conduct. When Zendle didn't find G.S. at the restaurant, he went to her dormitory and, thus, followed her there. That was the second act with a continuity of purpose—to meet G.S.—sufficient to demonstrate a course of conduct.

Zendle makes a cognate argument based on a statutory exception to "course of conduct" that excludes "constitutionally protected activity" and "conduct that was necessary to accomplish a legitimate purpose independent of making contact with the targeted person." K.S.A. 2021 Supp. 21-5427(f)(1). He says the second exception shows that the Legislature intended to require a physical contact between the stalker and the victim as a necessary element of the crime. But Zendle misreads the exception. The exception applies only if the ostensible stalker's conduct or action has a *purpose* wholly apart from contacting the ostensible victim. Here, the evidence clearly proved Zendle's only purpose was to contact G.S. That's precisely why he followed her to the restaurant and then to the dormitory. Zendle's lack of success didn't change the prohibited purpose behind his conduct or somehow shield his repeated following of G.S. from the statute's proscription.

Zendle does not otherwise dispute the sufficiency of the evidence, so we need not examine the record with respect to the remaining elements of reckless stalking. Accordingly, the jury heard sufficient evidence during the trial to support its guilty verdict. Zendle has not shown otherwise on appeal.

Affirmed.